COPY

1   **SYLVIA M. SCOTT** (Bar No. 134360)
    sms@ffslaw.com
2   **RUSSELL R. FISK** (Bar No. 227634)
    rrf@ffslaw.com
3   **FREEMAN, FREEMAN & SMILEY, LLP**
    Penthouse, Suite 1200
4   3415 Sepulveda Boulevard
    Los Angeles, CA 90034-6060
5   Telephone: (310) 255-6100
    Facsimile: (310) 391-4042
6
7   Attorneys for Plaintiff, TURAN PETROLEUM, INC.

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11  TURAN PETROLEUM, INC.                 CV08-07017 CBM      AJWx

12                                        Case No. _____

13           Plaintiff,

14  v.

15                                        **COMPLAINT FOR RELIEF**

16  YURI VANETIK; ANATOLY                 1) Securities Fraud – Rule 10b-5;
    ("TONY") VANETIK; HIEP T. TRINH;      2) Breaches of Fiduciary Duty;
17  DEAN MILLER; JUDY TRINH;              3) Conversion and Embezzlement;
    LARRY ALAN DU VALL; NRG               4) Constructive Fraud;
18  RESOURCES, INC.;                      5) Civil Conspiracy;
19  VALUELUCK.COM, INC.; ESSEX            6) Unfair Business Practices, *Cal. Bus. &*
    MANAGERS, LIMITED; CAPITAL            *Prof. Code, §§ 17200 et seq.*;
20  MARKETING SYSTEMS, INC.;              7) Interference with Prospective Business
21  PRIVATE EQUITY MANAGEMENT,            Relations;
    INC.; 888 CAPITAL, LLC;               8) Gross Mismanagement/Corporate
22  AMERICAN HERITAGE FUNDING,            Waste; and
23  LLC; ARCHER RESOURCES; PINE           9) Unjust Enrichment/Restitution
    BROOK, S.A.; HINES
24  INVESTMENTS, S.A.,
25                                        **Jury Trial Demanded**
26  and DOES 1 through 10, inclusive,
27
             Defendants.
28

---

- 1 -

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

Plaintiff Turan Petroleum, Inc., a corporation organized under the laws of the State of Nevada with its principal offices in Orange County, California, files this Complaint for Relief and Jury Demand against Defendants Yuri Vanetik; Anatoly ("Tony") Vanetik; Hiep T. Trinh; Dean Miller; Judy Trinh; Larry Alan Du Vall; NRG Resources, Inc.; Valueluck.com, Inc.; Essex Managers, Limited; Capital Marketing Systems, Inc.; Private Equity Management, Inc.; 888 Capital, LLC; American Heritage Funding, LLC; Archer Resources; Pine Brook, S.A., and Hines Investments, S.A. (hereinafter, jointly and severally, "Defendants"), and alleges as follows:

## I.    NATURE OF THE ACTION

1.      This action is brought by Turan Petroleum, Inc. ("Turan") based on a fraudulent scheme by Defendants, which includes Turan's former management and certain affiliates. Defendants, upon information and belief, induced Turan to issue millions of shares of stock to them in exchange for services that Turan never received. This scheme enabled Defendants to acquire millions of shares of "free" Turan stock and then sell those shares to the public for millions of dollars for their personal benefit. While Turan's former management and affiliates were receiving millions of dollars in profits from these illicit stock sales, Turan was struggling financially and in dire need of capital.

2.      This scheme involved the use of fictitious corporate "founders," forged stock powers, fraudulent stock transfers, "parking" shares in the name of unwitting shareholders, transfers of millions of dollars to overseas bank accounts, all to the detriment of Turan and for the benefit of Defendants, as described with particularity below.

3.      This action is also based on misuse and conversion of Turan's funds, breach of fiduciary duty, usurpation of corporate opportunity  and corporate waste, among other things.  The former Chief Executive Officer of Turan, acting in

**COMPLAINT FOR RELIEF**

1 | concert with others, repeatedly used Turan's funds for his personal benefit and for
2 | business ventures that did not involve Turan, upon information and belief.
3 | Turan brings this action to recover millions of dollars in losses caused by these
4 | Defendants' unlawful activities and for the purpose of protecting shareholders'
5 | interests in the company.

6

7 | **II.    JURISDICTION AND VENUE**

8 | 4.    This action arises under and pursuant to, inter alia, various sections of

9 | the Securities Exchange Act of 1934.  This Court has federal question jurisdiction

10 | over this action pursuant to 28 U.S.C. §§1331 and 1337.   Additionally, the Court

11 | has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over the related state

12 | law claims.

13 | 5.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

14

15 | **III.    THE PARTIES**

16 |    **A.    Plaintiff**

17 | 6.    Turan Petroleum, Inc. ("Turan" or "Plaintiff") is a Nevada

18 | corporation.  Turan's principal office is in Orange County, California.  Turan was

19 | incorporated in Nevada in March 2001, under the name Elite Registry, Inc.

20 | ("Elite").   Elite's name was changed to "Turan Petroleum, Inc." in or about

21 | January 2005.  While operating under the name Elite, Turan was essentially a shell

22 | company that had no significant operation.  In 2004, Turan entered the oil and gas

23 | industry.  In or about June 2008, Turan came under new management.

24 |    **B.    The Defendants**

25 |       ***The Individual Defendants***

26 |       **1.    Yuri Vanetik**

27 | 7.    Yuri Vanetik ("Yuri Vanetik"), a resident of Orange County,

28 | California, co-founded Turan as a shell company and is the son of Defendant Tony

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

- 3 -

1   Vanetik.  Yuri Vanetik, an attorney, was the Secretary of Turan from in or about

2   April 2001 through about October 2001.  After Yuri Vanetik ceased being the

3   Secretary of Turan, he continued to control Turan, along with Tony Vanetik until

4   about May 2008.

5       **2.**  <u>**Anatoly "Tony" Vanetik**</u>

6      8.  Anatoly ("Tony") Vanetik ("Tony Vanetik"), a resident of Orange

7   County, California, has been a director of Turan since about April 2001 through

8   the present.  From about April 2001 to about May 2008, Tony Vanetik was also

9   President and Treasurer of Turan and controlled the company, along with his son,

10  Defendant Yuri Vanetik.  In or about June 2008, Turan came under new

11  management, and Tony Vanetik ceased being an officer of Turan but continued as

12  a director.

13     9.  On or about September 23, 1991, Tony Vanetik was convicted of a

14  felony for subscribing to false income tax returns in violation of Title 26, U.S.C. §

15  7206 (Fraud and False Statements – Declaration Under Penalties Perjury).  *See,*

16  *United States v. Vanetik*, Case No. CR 91-369-RG (USDC Central District) (1991).

17  For this felony conviction, Tony Vanetik was placed on probation for five (5)

18  years, ordered to pay all taxes due, and fined $5,000.00.

19      **3.**  <u>**Hiep T. Trinh**</u>

20     10.  Hiep T. Trinh ("Hiep Trinh"), a resident of Orange County,

21  California, is a founder of Turan and, together with Defendants Tony Vanetik and

22  Yuri Vanetik, controlled Turan from its inception (March 2001), until new

23  management took over in or about June 2008.

24     11.  Prior to founding Turan, Hiep Trinh was registered as a broker with

25  the National Association of Securities Dealers, Inc. ("NASD"), now known as the

26  Financial Industry Regulatory Authority ("FINRA").  In or about June 2001, the

27  NASD instituted disciplinary proceedings against Hiep Trinh, based on findings

28  that he converted $10,000.00 from a client and used it for his own personal benefit

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

1  instead of purchasing a mutual fund for the client.  The NASD barred Hiep Trinh
2  from ever associating with an NASD member/broker, the most serious sanction
3  that could be imposed by the NASD.  See, *In re Hiep T. Trinh*, NASD Case No.
4  C02010024 ("NASD Bar Order"), reported in NASD Notice to Members July
5  2001 (www.finra.org).  Hiep Trinh consented to the entry of the NASD Bar Order
6  without admitting or denying the findings contained therein.

7      12.    Arising from essentially the same findings as the NASD Bar Order
8  (i.e., converting customer funds for his personal use), the banking authority, Office
9  of Thrift Supervision, instituted enforcement proceedings against Hiep Trinh in or
10  about September 2001 ("OTS Bar") and barred him from ever associating with
11  certain banking institutions.  *See, In re Hiep T. Trinh*, OTR Order No. SF-01-008.
12  Hiep Trinh consented to the entry of the OTS Bar without admitting or denying the
13  findings contained therein.

14      13.    Despite being barred from ever acting in the capacity of a broker,
15  Hiep Trinh apparently continued to act as an *unlicensed* broker through his
16  company, Defendant Private Equity Management, Inc.  Hiep Trinh caused Private
17  Equity Management, Inc. to sell millions of Turan shares to multiple members of
18  the public in an unregistered secondary distribution, upon information and belief.
19  As detailed below, these Turan shares were obtained through a series of sham
20  transactions in which Turan received no benefit whatsoever, upon information and
21  belief.

22      **4.**    **Judy Trinh**

23      14.    Judy Trinh ("Judy Trinh"), a resident of Orange County, California, is
24  the President, Treasurer and a director of Defendant Private Equity Management,
25  Inc., upon information and belief.  She is also the wife of Defendant Hiep T. Trinh,
26  upon information and belief.

27  ///

28  ///

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

### 5.   Dean Miller

15.    Dean Miller ("Miller"), is a resident of Orange County, California, upon information and belief.  Miller and his company, Defendant 888 Capital, Inc., based on their relationship with Tony Vanetik, received large blocks of Turan stock and stock options that were not fully paid for, upon information and belief. Miller and his company, in turn, sold some of these shares to various investors.

16.    Miller pled guilty to a felony on November 19, 2004 and, on February 25, 2005, an order was entered confirming the felony conviction and sentencing Miller to forty-eight (48) months in prison (with credit for time served), a fine in the amount $10,000.00 and three (3) years probation upon release from prison. *United States v. Dean Miller*, Case No. EP-03-CR-2294, United States District Court (Western District of Texas).  The nature of the federal offense committed by Miller was, "Conspiracy to smuggle cigarettes in the United States, traffic in contraband cigarettes and traffic in counterfeit goods," in contravention of 18 U.S.C. § 371 (Conspiracy to Commit Offense or to Defraud United States), § 545 (Customs - Smuggling Goods into the United States), § 2342 (Trafficking in Contraband Cigarettes) and § 2320 (Stolen Property -- Trafficking in Counterfeit Goods or Services).

### 6.   Larry Alan Du Vall

17.    Larry Alan Du Vall is a resident of Scottsdale, Arizona, upon information and belief.  He is a co-conspirator in the illicit stock distribution scheme.

### *The Corporate Defendants*

### 5.   NRG Resources, Inc.

18.    NRG Resources, Inc. ("NRG"), is a Nevada corporation founded and controlled by Tony Vanetik and Hiep Trinh, upon information and belief.  NRG, based in Orange County, California, during all relevant times, shared its offices

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

1   with Turan through in or about May 2008.  Hundreds of thousands of dollars of

2   Turan's funds were misused to pay NRG's expenses, upon information and belief.

3         **6.**     **Valueluck.com, Inc.**

4        19.   Valueluck.com, Inc. ("Valueluck") was incorporated in Delaware on

5   or about March 31, 2000, upon information and belief.  During all relevant times,

6   Valueluck has been controlled by Tony Vanetik, Yuri Vanetik, and possibly others.

7   On or about August 9, 2001, Valueluck's Delaware corporate status was

8   "forfeited." Valueluck currently owes back taxes to the State of Delaware totaling

9   approximately $93,900.00.  Although Valueluck has never been incorporated in

10  Nevada, Valueluck has held itself out as a Nevada corporation to Turan's transfer

11  agent in order to facilitate various illicit stock transfers, upon information and

12  belief.

13        **7.**     **Essex Managers, Limited**

14       20.   Essex Managers, Limited ("Essex"), is a British Virgin Islands

15  corporation and has been a principal shareholder of Turan since about July 2005,

16  upon information and belief.  During all relevant times, Essex has been controlled

17  by Tony Vanetik, Yuri Vanetik and possibly others, upon information and belief.

18  Essex received approximately 4,745,000 shares of Turan's stock from Turan, while

19  Turan received nothing of value in return, upon information and belief.

20        **8.**     **Private Equity Management, Inc.**

21       21.   Private Equity Management, Inc. ("Private Equity Management"), is a

22  Nevada corporation, controlled by Hiep Trinh and Judy Trinh and based in Orange

23  County, California.

24        **9.**     **Hines Investments, S.A.**

25       22.   Hines Investments, S.A. ("Hines") is a Panama corporation, upon

26  information and belief.  Hines is controlled, directly or indirectly, by Tony

27  Vanetik, Yuri Vanetik and possibly others, upon information and belief.

28  ///

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

### 10. 888 Capital, LLC

23. 888 Capital, LLC ("888 Capital"), is a Nevada limited liability company and controlled by Miller. 888 Capital's principal place of business is in Orange County, California, based upon information and belief.

### 11. American Heritage Funding, LLC

24. American Heritage Funding, LLC ("AHF"), is a Nevada limited liability company and is controlled by Tony Vanetik, upon information and belief.

### 12. Archer Resources

25. Archer Resources is a Nevada corporation controlled by Tony Vanetik. Tony Vanetik is the president, treasurer, secretary and sole director of Archer Resources.

### 13. Capital Marketing Systems, Inc.

26. Capital Marketing Systems, Inc. ("Capital Marketing Systems") is a Nevada corporation. Tony Vanetik founded Capital Marketing Systems and is the initial and has been the initial and sole director of this company during all relevant times, upon information and belief. Capital Marketing System's principal place of business is in Orange County, California, upon information and belief.

### 14. Pine Brook, S.A.

27. Pine Brook, S.A. ("Pine Brook") is apparently a Panama corporation, upon information and belief. Pine Brook is controlled, directly or indirectly, by Tony Vanetik and possibly others, upon information and belief.

28. The true names and capacities of defendants Does 1 through 10, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants fictitiously named herein as Doe is legally responsible in some manner for the events and happenings hereinafter alleged and/or is legally affiliated with the named Defendants herein or some of them.

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

IV.   **FACTS GIVING RISE TO ALL COUNTS**

A.   **Historical Background Regarding the Company and the Fraudulent Scheme**

29.   Turan is currently based in Costa Mesa, in Orange County, California, and has been under new management since in or about June 2008.  From the beginning of Turan in or around April 2001 (as Elite Registry, Inc.) until about November 2004, Tony Vanetik was the sole director, Chairman of the Board, President and Treasurer, and Yuri Vanetik was Secretary.  In October 2001, Yuri Vanetik resigned as Secretary.  In November 2004, Robert Van Duren became a director and Secretary/Treasurer.  The Board was eventually expanded to include more directors, and Van Duren resigned from the Board in April 2008.  In May 2008, Hiep Trinh replaced Robert Van Duren as Secretary/Treasurer.  In or around June 2008, Askar Karabayev, already a director, became President and CEO and other new managers came into the positions of Secretary/Treasurer and Chief Operating Officer.  Tony Vanetik remains a director. As of October 23, 2008, Askar Karabayev is Chairman of the Board.

30.   Turan entered the oil and gas industry in or about late 2004, when it acquired control of Turan EnerPetroleum, TOO ("TEP"), organized and domiciled in the Republic of Kazakhstan.  Prior to this acquisition, Turan was a shell company named "Elite Registry, Inc."  TEP has been the holder of a license granted by the Kazakhstan government (the "Concession") to explore and extract hydrocarbons in a territory consisting of over 5,000,000 acres located in South Kazakhstan.

31.   At or about the time the negotiations for the Concession were being finalized (also referred to as the "Kazakhstan oil deal"), Defendants Tony Vanetik, Yuri Vanetik, Hiep Trinh, Miller and others were making plans to take the Kazakhstan oil deal public by acquiring a shell company.  Significantly, these plans also included a fraudulent scheme by these Defendants to accumulate large

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

1    blocks of Turan shares through sham transactions and "parking" transactions,

2    whereby insider shares were parked in the names of certain persons without their

3    knowledge. In some cases, the persons may have been fictitious, upon information

4    and belief.

5        32.    With regard to the use of "parking" transactions, Yuri Vanetik openly

6    acknowledged their use in an email that was sent on or about April 14, 2005:

7            "We are planning to set up one to several Nevada entities as parking

8            spaces for the shares that will be issued to Turan's partners in

9            consideration for the oil concession. Assuming that the shares will

10           become valuable, do you see any red flags down the road, if within 6

11           month to 1 year, the Kazaks decide to transfer these shares to

12           European companies or trusts. The Nevada entities could either be

13           corps or llc and would be 100% owned by foreign nationals. We are

14           looking for a simple, inexpensive solution at this stage ...."

15       33.    Elite Registry, Inc., a shell company controlled by Tony Vanetik, Yuri

16   Vanetik and Hiep Trinh, was selected as the shell company that was to take the

17   Kazakhstan oil deal public. In an email from Yuri Vanetik to Tony Vanetik, Miller

18   and others, dated November 19, 2004, the *same day* Miller pled guilty to multiple

19   federal felonies and while Tony Vanetik was still on probation for his felony

20   conviction (hereinafter, the "Yuri Vanetik 11/04 Email"), Yuri Vanetik outlined

21   the following Four-Phase Plan they devised for taking the Kazakhstan oil deal

22   public:

23           "Summarizing the discussions we had on Thurs Nov 19, below is a

24           list of steps we would need to go through to prepare a gray market

25           company for the Kazakhstan oil deal. I also took the liberty of

26           drawing out a 4 phase plan and what I would consider an optimistic

27           time line for getting this project to SB2 *[a Securities and Exchange*

28

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

- 10 -

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

*Commission securities registration form for small businesses]* filing stage.

**Phase I - Merger Entity Created (1-2 weeks)**

    1.    Identify a Nevada or Delaware Entity that is:

        a.  Over 2 years old

        b.  Clean

        c.  Has at least several shareholders who have been holding shares for over 2 years and are not affiliated  holding less than 10%

        d.  Has a business plan, executed sub Ks for services or demonstrated Investment (i.e., bank records, receipts, etc....)

    2.    Reinstate in Nevada or Delaware and change name Turan Petroleum, Inc. (Turan)

    3.    Open bank account and file SS4 (if never filed)

    4.    Obtain opinion letter re tradeable shares

    5.    Obtain expedited CUSIP #

    6.    Moodys or S&P

    7.    Transfer Agent

    8.    Broker

    9.    NASD symbol

**Phase II - Combination (2 weeks) ...**

    1.    [Investor] acquires shares in Turan, providing additional working capital for audit and legal

    2.    Draw up merger agreement where Turan acquires [the Concession] ...

    3.    Shares issued to Kazakh side (49%) and to US group (Tony [Vanetik], ..., Miller, ... Hiep Trinh, etc.)

- 11 -

**COMPLAINT FOR RELIEF**

**Phase III - Move to Pinks and Audit (2-3 months)**

...

3.    Prepare Business Plan for Turan

4.    Publish info on pinks

5.    Press release (PR web, etc.)

6.    Set the price on the pinks high (i.e., $10) with virtually no trading. *[The "pinks" or "pink sheets" is the registered name for a centralized quotation service that collects and distributes market maker quotations for securities traded in the over-the-counter market. The service is named for the color of the sheets on which the National Quotation Bureau distributed bid and ask quotations for OTC securities. In 1999, "Pink Sheets" introduced its Electronic Quotation Service, which provides real-time quotes for OTC equities and bonds.]*

...

**Phase IV - SB2**

1.    File SB2

2.    Institutional raise pursuant to business plan financial projections

3.    Explore JV partners "

34.    Most of the steps in Phases I through III were carried out by the Defendants, using manipulative and deceptive devices in contravention of federal and state securities laws, as detailed below. The Four-Phase Plan never progressed to Phase IV due to gross mismanagement of Turan, corporate waste, and repeated usurpation of corporate opportunities variously perpetrated by the Defendants. Consequently, Turan's securities were never registered, and it did not become a public company as planned.

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

35.    In accordance with Phase I of the Four-Phase Plan prepared by Yuri Vanetik, Elite Registry, Inc., was selected as the shell company for the Kazakhstan oil deal because it was a Nevada entity and was over two years old.    In order to make Elite Registry, Inc. a "clean shell" and meet other criteria outlined in the Four-Phase Plan, Yuri Vanetik outlined an "Elite Registry, Inc. Timeline" to confirm and ensure that the company would be a suitable shell.    In an email dated December 14, 2004, sent by Yuri Vanetik, he stated the following:

"Elite Registry, Inc. Timeline:

1. Articles    Filed/received    and    stamped    March    28,    01 (incorporated Nevada)

2. Tony Vanetik – Director and President, Yuri Vanetik, Secretary

3. April 5/01 – Adopted Bylaws by Yuri Vanetik, Secretary

4. April 8/01  Organization Resolutions, signed by Director

5. April 10/01  Founders Shares issued to founder

6. April 20/01    Bill Fawcett and Teknowledge brought in – Fawcett as CEO and Teknowledge as consultant to map out and develop web site

7. April 25/04  Business plan completed (including subscription agreement with set closing date of September 14/01 to raise $750K from accredited investors)

8. October 8  Yuri resignation

9. October 17/01  No funds raised from the private placement; Fawcett leaves and Teknowledge ceases all work on the web site/software.    Elite by resolution accepts Fawcett's verbal resignation as officer/director, and terminates him to make sure that the relationship is unequivocally severed (also terminates  Teknowledge  agreement).    Yuri  Vanetik's

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

resignation accepted.   <u>This is done by resolution and shareholder vote</u>.

10. Company is dormant until November 24/2004

11. December 1   Company reinstated, new officers/directors elected by resolution (Tony Vanetik CEO, Bob Van Duren/Sec treasurer) and Name changed processed to Turan Petroleum.

12. December 10, 2004   Company elects to pursue new business plan of acquiring a government concession from Aral Petroleum and KazEnerPetrol.   New board resolutions and new subscription agreements are issued to Bob Van Duren, Craig Shaber, Dean Miller, Lea Samango....”

36.   An understanding of the dubious activities surrounding the formation of Elite Registry, Inc. is instructive with regard to how the Defendants were able to manipulate Turan's stock in an unregistered secondary distribution of their Turan shares.  Elite Registry, Inc. was a shell that had been incorporated in Nevada in March 2001, and was founded and controlled by Tony Vanetik, Yuri Vanetik and Hiep Trinh.  Pursuant to a Written Consent of the Board of Directors of Elite Registry, Inc., dated April 10, 2001 and signed by Tony Vanetik ("April 2001 Board Action"), Tony Vanetik became the President, Chairman of the Board and Treasurer of Elite Registry, Inc., and Yuri Vanetik became the Secretary, as also described in Yuri Vanetik's emails.

37.   Pursuant to the April 2001 Board Action, Tony Vanetik, Yuri Vanetik, Hiep Trinh and Valueluck (an entity controlled by Tony Vanetik and Yuri Vanetik) received controlling interests in Elite Registry, Inc. when they received 6,400,000 "founders" shares, as follows:

| | |
|---|---|
| Tony Vanetik: | 3,100,000 shares |
| Yuri Vanetik: | 1,100,000 shares |

COMPLAINT FOR RELIEF

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

| Valueluck: | 1,000,000 shares |
| Hiep Trinh: | 1,200,000 shares |

38.   In April 2001, also pursuant to the April 2001 Board Action, additional "founders" shares of Elite Registry, Inc. were purportedly issued to, among others, the following persons:

| Geoffrey Fiala: | 1,100,000 shares |
| Joseph Weaver: | 200,000 shares |
| Franklin Wolfson: | 100,000 shares |

39.   In truth and in fact, Geoffrey Fiala ("Fiala"), Joseph Weaver ("Weaver") and Franklin Wolfson ("Wolfson") were *not* founders of Elite Registry, Inc., and none of them had ever provided any services to, or worked for, Elite Registry, Inc. (i.e., Turan).   Nonetheless, Tony Vanetik, Yuri Vanetik and Hiep Trinh listed Fiala, Weaver and Wolfson as "founders" of Elite Registry, Inc., without their knowledge.

40.   With regard to Fiala, he was not aware that he had been designated as a founder of Turan by Tony Vanetik and Yuri Vanetik.   Fiala never received the Turan share certificates issued in his name.   Tony Vanetik told Fiala that the 1,100,000 shares of Elite Registry, Inc. was compensation for Fiala's work for One Point, Inc. (another of Tony Vanetik's companies) and because Fiala had invested in another apparently unsuccessful venture of Tony Vanetik's (ACCEL Data, Inc.).

41.   In or about April 2005 (about four years later, after "Elite Registry, Inc." had become "Turan Petroleum, Inc." and had ceased being a dormant shell company), Tony Vanetik told Fiala that he had given Fiala too many shares and reclaimed most of them (860,000), upon information and belief.   In or about April 2005, Fiala's shares were transferred to the following entities Tony Vanetik and/or Yuri Vanetik controlled (directly or indirectly):

| Darby Holdings, Inc.: | 260,000 shares |
| Globex Holding LLC: | 300,000 shares |

- 15 -

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

1    Accelco LLC:   300,000 shares

2  42. Pursuant to Tony Vanetik's instruction letter to the transfer agent,

3 Fiala retained four (4) Turan stock certificates, as of April 2005, as follows:

4    Certificate No. 75:  210,000 shares

5    Certificate No. 76:  20,000 shares

6    Certificate No. 77:  5,000 shares

7    Certificate No. 78:  5,000 shares.

8  43. On or about October 15, 2007, Tony Vanetik caused 210,000 Turan

9 shares that were in the name of Fiala (i.e., Certificate No. 75) to be issued to Larry

10 Alan Du Vall.  Fiala was not aware of and did not authorize this transfer, upon

11 information and belief.  Additionally, the Irrevocable Stock/Bond Power Form,

12 dated September 28, 2007, purportedly verifying Fiala's authorization of this

13 transfer, contains a forgery of Fiala's signature ("Forged Fiala Stock Power"),

14 upon information and belief.  Fiala provided a statement to current management of

15 Turan confirming the foregoing facts.

16  44. Tony Vanetik signed and caused to be mailed to Turan's transfer

17 agent an instruction letter (dated and sent on or about October 12, 2007), along

18 with the Forged Fiala Stock Power, to effectuate this fraudulent transfer, upon

19 information and belief.  Further, Tony Vanetik signed a check, dated October 11,

20 2007, from Turan's bank account at Wells Fargo and made it payable to Turan's

21 transfer agent in the amount of $200.00 to pay for this fraudulent stock transfer, as

22 well as the fraudulent stock transfers involving Turan stock certificates in the

23 names of Joseph Weaver and Franklin Wolfson, upon information and belief.

24 Tony Vanetik caused this check to be mailed to the transfer agent, upon

25 information and belief.

26  45. With regard to Joseph Weaver, he received his so-called "founders"

27 shares primarily for services he performed for *NRG*, and possibly another business

28 venture of Tony Vanetik's, upon information and belief.  Joseph Weaver was not

**COMPLAINT FOR RELIEF**

1   aware that he had been designated a founder of Turan, upon information and belief.

2   Joseph Weaver never received the Turan stock certificates issued in his name.

3   Joseph Weaver provided a statement to current management of Turan confirming

4   the foregoing facts.

5        46.   On or about October 15, 2007, Tony Vanetik caused 190,000 Turan

6   shares in the name of Joseph Weaver (i.e., Certificate No. 26) to be issued to Larry

7   Alan Du Vall. Joseph Weaver was not aware of and did not authorize this transfer,

8   upon information and belief. Additionally, the Irrevocable Stock/Bond Power

9   Form, dated October 8, 2007, purportedly verifying Joseph Weaver's authorization

10   of this transfer, contains a forgery of Weaver's signature ("Forged Weaver Stock

11   Power"). Joseph Weaver provided a statement to current management of Turan

12   confirming the foregoing facts.

13        47.   Tony Vanetik signed and caused to be mailed to Turan's transfer

14   agent an instruction letter (dated and sent on or about October 12, 2007), along

15   with the Forged Weaver Stock Power, to effectuate this fraudulent act, upon

16   information and belief.

17        48.   With regard to Franklin Wolfson, another phantom founder of Elite

18   Registry, Inc., he, too, paid nothing of value to Elite Registry, Inc. (or Turan) for

19   his so-called "founders" shares, upon information and belief. Franklin Wolfson

20   received his so-called "founders" shares for services that he performed for another

21   business venture of Tony Vanetik's.

22        49.   On or about October 15, 2007, Tony Vanetik caused 30,000 Turan

23   shares that were in the name of Franklin Wolfson (i.e., Certificate No. 198) to be

24   issued to Larry Alan Du Vall, upon information and belief. Franklin Wolfson was

25   not aware of and did not authorize this transfer, upon information and belief.

26   Additionally, the Irrevocable Stock/Bond Power Form, dated *August 1, 2006,*

27   (almost 15 months *before* the transfer was to occur), purportedly verifying Franklin

28   Wolfson's authorization of this transfer, contains a forgery of Franklin Wolfson's

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

1  signature ("Forged Wolfson Stock Power").   Franklin Wolfson provided a

2  statement to current management of Turan confirming the foregoing facts.

3      50.   Tony Vanetik signed and caused to be mailed to Turan's transfer

4  agent an instruction letter (dated and sent on or about October 12, 2007), along

5  with the Forged Wolfson Stock Power, to effectuate this fraudulent transfer, upon

6  information and belief.

7      51.   Other persons who received "founders" shares of Elite Registry, Inc.

8  also appear to be phantom founders and either served as additional "parking

9  places" for Elite Registry, Inc. stock and/or received the shares without providing

10 anything of value to the company, upon information and belief.   Additional

11 persons who were listed as Elite Registry, Inc. "founders" (possibly without their

12 knowledge) and received "founders" shares in or about April 2001, are as follows,

13 upon information and belief:

14         Paul Blomgren:          300,000 shares

15         Donald Borba:          200,000 shares

16         Aaron Highley:          100,000 shares

17         Ali Alex Aliakbari:      150,000 shares

18         Ben Perry:             100,000 shares

19         Allessandro Assanti:    100,000 shares

20         Manley Gray III:        150,000 shares

21     52.   With regard to Manley Gray III, transfer agent records reflect that this

22 "transaction" was not effected until April 10, 2004, three years *after* he purportedly

23 founded the company. Additionally, the shares were issued to a "Manley Gray, *II*"

24 (italics added).

25     53.   All told, Elite Registry, Inc. issued a total of **10,000,000** "founders"

26 shares to fifteen (15) different persons in April 2001.  Given that Elite Registry,

27 Inc. was a shell company at the time, it is unlikely that the services of more than

28

**COMPLAINT FOR RELIEF**

fifteen (15) different persons were required to set up the Company at this stage of its infancy.

54.     Further, the Written Consent of the Board of Directors of Elite Registry, Inc. ("Elite Board Action"), dated April 10, 2001 and signed by Tony Vanetik upon information and belief, states:

> "The [10,000,000] shares of Common Stock to be issued shall be founders shares issued to accredited investors pursuant to subscription agreement dated April 10, 2001 (a sample copy of which is attached hereto)."

55.     Turan (i.e., Elite Registry, Inc.) has no record of any subscription agreements linked to these "founders" shares.

56.     The shares Elite Registry, Inc. (i.e., Turan) issued to many or most of the "founders" were not fully paid for, upon information and belief.  Moreover, these illicit activities were part of a larger scheme to manipulate Turan's stock in connection with an unregistered secondary distribution of stock by Turan insiders, upon information and belief.

57.     Defendants Tony Vanetik, Yuri Vanetik and Hiep Trinh intentionally installed the foregoing phantom founders, in anticipation of employing manipulative trading practices in the event a suitable deal came along, upon information and belief.  In this case, that suitable deal was the Kazakhstan Oil Deal (i.e., the Concession), utilizing the Four-Phase Plan outlined by Yuri Vanetik in the above-described email.

58.     As discussed in more detail below, many of the shares issued to the phantom founders of Elite Registry, Inc. would be "reclaimed" by Tony Vanetik and/or affiliated entities he controlled to facilitate lucrative insider sales at the expense of Turan.

59.     In accordance with Phase II of the Four-Phase Plan, Turan began issuing shares to the "US Group," which ironically involved entities that were

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

- 19 -

**COMPLAINT FOR RELIEF**

1  foreign companies and/or had offshore accounts (to which millions of dollars were

2  transferred).  In or about December 2004, **16,400,000** shares of Turan stock were

3  issued to nine (9) persons pursuant to a Board of Directors Unanimous Written

4  Consent and Authorization signed by Tony Vanetik, dated December 14, 2004 (the

5  "December 2004 Board Action").  The following Defendants received **8,800,000**

6  **shares** pursuant to the December 2004 Board Action:

       7            Tony Vanetik:           **2,800,000** shares (increasing his

       8                                  total stockholdings to *5,900,000*)

       9            Yuri Vanetik:           **1,600,000** shares (increasing his

10                                  total stockholdings to *2,700,000*)

11            Valueluck:              **2,800,000** shares (increasing its

12                                  total stockholdings to *3,900,000*)

13            Miller:                   **1,600,000** shares

14            Alexander Kushnerenko:   **400,000** shares

15       60.  With regard to the entire 16,400,000 shares issued by Turan, the

16  December 2004 Board Action states that they were issued for the following

17  reasons:

18          "[I]n order to attract qualified consultants, employees, and advisors to

19          enable to Company *[sic]* to pursue its new business plan; the shares

20          shall be issued for services and/or miscellaneous expenses related to

21          reinstating the Company, processing the name change to Turan

22          Petroleum, and other costs incurred by the Company's directors and

23          officers."

24       61.  The December 2004 Board Action does not indicate a per share price

25  or other value attributed to the 16,400,000 Turan shares issued to these and four

26  other persons.  However, the Yuri Vanetik 11/04 Email states that by January

27  2005, Turan's share price will be "set high (i.e., $10)" and, not surprisingly,

28

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

1    Turan's insiders eventually sold their shares for millions of dollars, as detailed

2    below.

3         62.    These insiders did not provide millions of dollars in services to Turan

4    for the shares they received pursuant to the December 2004 Board Action, upon

5    information and belief. Further, processing Turan's name change and "reinstating"

6    the company (along with expenses associated therewith) could not possibly justify

7    the issuance of millions of dollars of Turan shares, particularly given that no SEC

8    registration filings were ever made and the costs associated with "reinstating the

9    company" are relatively modest.

10        63.    Neither Miller nor his company, 888 Capital, provided any services,

11   nor gave anything of value to Turan in exchange for the 1,600,000 shares he

12   received, as discussed in more detail below. Further, an associate of Tony Vanetik

13   named Alexander Kushnerenko received additional "compensation" from Turan,

14   totaling $139,450.00. Moreover, Valueluck, a forfeited Delaware corporation by

15   this time, provided no services to Turan.

16        64.    On or about January 25 2005, Elite Registry, Inc.'s Articles of

17   Incorporation were amended confirming that the company had been renamed,

18   "Turan Petroleum, Inc." and designating as its "initial directors" Tony Vanetik and

19   another individual. Tony Vanetik continued to be President of Turan through in or

20   about May 2008. Although Yuri Vanetik no longer held an official position with

21   Turan once it was renamed "Turan Petroleum, Inc.," Yuri Vanetik continued to

22   exercise control over Turan, along with his father (Tony Vanetik) and Hiep Trinh.

23        65.    In or about late April 2005, in accordance with Phase III of the Four-

24   Phase Plan, Turan was listed on the Pink Sheets and, as directed by Yuri Vanetik,

25   "the price on the pinks" was set high, between $12.00 and $13.00 per share. This

26   enabled the Defendants to receive inflated prices for their insider shares in the

27   unregistered secondary distribution of the their stock, detailed below.

28

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

- 21 -

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

66.   Since its inception, Turan has had no revenues, other than the receipt of proceeds from the sale of a piece of another concession for $300,000.00 to Russian Angel Acquisition, LLP.   Moreover, Tony Vanetik, in usurpation of a corporate opportunity for Turan to raise desperately needed capital, arranged for him and the other defendants to sell their insider shares through the aforementioned manipulation.   Further, as detailed below, Tony Vanetik converted for his own benefit and the benefit of other companies owned by him, what little capital Turan was permitted to raise for its operations.

**B.    The Secondary Distribution of Insider Stock**

67.   A *secondary* distribution of stock, broadly defined, is one made on behalf of some person or persons other than the issuer (i.e., the company).   In contrast, a *primary* distribution is an offering made on behalf of the issuer of the securities. The proceeds realized from a *primary* distribution are available to the company to be used for corporate purposes.   In contrast, the proceeds realized from a *secondary* distribution are enjoyed by third parties, *other than* the company.

68.   A secondary distribution of outstanding securities is subject to the registration requirements of Section 5 of the Securities Act of 1933, where the redistribution takes on the characteristics of a new offering by reason of the control over the issuer exercised by those responsible for the secondary offering.   This includes secondary distributions through underwriters or controlling stockholders.

69.   Defendants accumulated large blocks of Turan stock, as detailed herein, and then embarked on an unregistered *secondary* distribution of their stock (hereinafter, the "Secondary Distribution"), for which Turan received no benefit. In connection with the Secondary Distribution, the Defendants variously acted as "underwriters," as that term is defined in Section 2(11) of the Securities Act of 1933, because they acquired their Turan shares with a view to distributing those shares.

- 22 -

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

70.    The Secondary Distribution described herein was not registered as apparently required by federal securities laws.  Additionally, the Defendants did not register with state or federal agencies in connection with their varying roles as underwriters and participants in the Secondary Distribution.   These apparent federal and state registration violations threaten to damage Turan's reputation and subject it to regulatory scrutiny even though Turan received *no benefit* from these apparent illicit activities.  Indeed, even the funds Turan received in connection with its private placement, were in large part misused and/or converted by Tony Vanetik for his other businesses (as detailed below).

71.    Moreover, the funds raised by Turan in its own private placement were but a *small fraction* of the proceeds realized by Defendants in the Secondary Distribution.  Turan raised approximately **$2,635,000.00** in its private placement, based on corporate records new management was able to obtain from former management.  In stark contrast, Defendants raised approximately **$10,000,000.00 – $15,000,000.00**, or possibly more, in the Secondary Distribution, upon information and belief.

72.    Turan's private placement and the Secondary Distribution occurred at or about the same time.  On repeated occasions, as detailed below, Tony Vanetik (who has been a director of Turan from its inception through the present), Yuri Vanetik and Hiep Trinh, conspired to usurp corporate opportunities for Turan to sell its shares to investors and, instead, arranged for investors to purchase Defendants' insider shares.  Some of these investors apparently believed they were purchasing shares from Turan when, in fact, they were purchasing shares from Defendants.

**1.    Insider Transactions by Valueluck, Yuri Vanetik, Hiep Trinh and American Heritage Funding**

73.    Defendant Valueluck (controlled by Yuri Vanetik, Tony Vanetik, and possibly others) accumulated a total of 2,800,000 shares of "free" Turan stock.

**COMPLAINT FOR RELIEF**

Valueluck received 1,000,000 "founders" shares in April 2001 (when Turan was "Elite Registry, Inc."), as discussed above.  Valueluck received another 1,800,000 shares of Turan stock in December 2004, at or about the time Elite Registry, Inc., became Turan and entered the oil and gas industry.

74.   Valueluck sold a total of 345,000 shares of its Turan stock, as follows:

| Date | Purchaser | Shares |
|------|-----------|--------|
| 1/31/06 | Anthony T. Nguyen | 80,000 |
| 8/30/06 | Hidden Villa Ranch | 100,000 |
| 8/30/06 | Zubkoff Living Trust | 5,000 |
| 9/11/06 | Joseph Phan | 10,000 |
| 11/21/06 | Kosti Shirvanian | 150,000 |

75.   In or about January 2006, through the introduction of Defendant Hiep Trinh and Mitch Ngo, Anthony T. Nguyen ("Nguyen") became interested in investing in Turan.  At the time, Turan was in dire need of capital and stood ready to sell its shares to Nguyen.  However, Nguyen was directed to purchase his shares from Valueluck, as part of the overall plan to redistribute profits generated from the "free" Turan shares Defendants had received.  Indeed, Hiep Trinh, for his part, owned approximately 1,200,000 "founders" shares at the time.  However, Hiep Trinh coordinated with Tony Vanetik and Yuri Vanetik to have Valueluck be the seller in this transaction, upon information and belief.

76.   Tony Vanetik's role in these coordinated efforts constituted a breach of his fiduciary duty to Turan because Valueluck's shares were not fully paid for and Turan desperately needed to raise capital for its operation.

77.   On or about January 17, 2006, a "Confidential Stock Transfer Agreement" was entered into by and between "Anthony Tuan Nguyen" and "Valueluck" (hereinafter, the "Valueluck/Nguyen Agreement").  The Valueluck/Nguyen Agreement does not indicate whether "Valueluck" is a corporation or limited liability company, nor does it indicate whether "Valueluck"

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

is licensed or registered in any particular state or country.  The Valueluck/Nguyen Agreement provides that Nguyen shall pay $200,000.00 for 80,000 shares of Turan stock (a per share price of $2.50).   Nguyen paid at least $100,000.00 of this purchase price to "Valueluck" on or about January 19, 2006, as reflected by a cancelled check to "Valueluck."

78.    On or about January 27, 2006, Tony Vanetik and the other then-Turan director (Robert Van Duren), signed an Action By Written Consent of the Directors of Turan Petroleum, Inc. (hereinafter, the "January 2006 Board Action") accepting Valueluck's request to transfer 80,000 shares of its Turan stock to Nguyen.  In response to that request, Turan's transfer agent requested a corporate resolution from Valueluck authorizing an individual to sign on Valueluck's behalf.

79.    Valueluck provided a consent resolution by its alleged board, apparently composed of one director, Sergey Lipatov, and approving the appointment of Leon Petrosov ("Petrosov") as a second director (hereinafter, the "Valueluck Document").  The Valueluck Document represents that Valueluck is a *Nevada* corporation.  However, there is no such corporation, active or inactive, in the Nevada Secretary of State's online records.  Moreover, Valueluck appears to be a "forfeited" *Delaware* corporation, as reflected in records of the Division of Corporation of the State of Delaware.  Further, an email dated February 21, 2007, to Tony Vanetik and Yuri Vanetik from a then-Turan director (Robert Van Duren) reflects that Yuri Vanetik would be designated as the control person for "official" purposes:

> "As we discussed I am using the numbers below for the PPM [Turan's private placement memorandum].
>
> …
>
> **I have Yuri [Vanetik] controlling Valueluck (2,465,000)** and personal 2,660,000. … " (Emphasis added.)

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

80.   A stock transfer form was provided to Turan's transfer agent by Valueluck, signed by *Petrosov*, transferring 80,000 shares to Nguyen, along with the dubious Valueluck Document appearing to certify that Petrosov was authorized to sign on Valueluck's behalf.

81.   When Nguyen subsequently attempted to contact Valueluck by addressing a letter to Petrosov, he was unsuccessful in reaching Valueluck or anyone associated with that entity.  Consequently, in or about July 2008 (by which time Turan came under new management), Nguyen contacted Turan and complained, threatening litigation and expressing outrage.

82.   Nguyen informed Turan that he paid not only $100,000.00 via a check to "Valueluck" (discussed above) but also paid cash to Hiep Trinh.  To support his contention that he paid $100,000.00 in cash to Hiep Trinh, Nguyen provided Turan a handwritten receipt, dated January 25, 2006, and apparently signed by Hiep Trinh:

"Receipt of Funds

I, Hiep Trinh on behalf of Valueluck certify the receipt of $100,000.00 from Tony Nguyen for the purchase of Turan shares as per the Subscription Agreement."

/s/  Hiep Trinh                    /s/ Tuan Nguyen."

83.   Nguyen's understandable outrage and suspicion at the apparent non-existence of an entity called "Valueluck" has caused him to reach out to other Turan shareholders who purchased shares from other Turan's affiliates (e.g., PEM/ Hiep Trinh, discussed below).  The result is that Turan's reputation has been materially damaged, impeding its ability to raise much needed capital.  Moreover, these desperate and angry shareholders are threatening lawsuits against any person or entity connected to these manipulative trading practices by Turan's *affiliates*, including Turan, even though Turan did not receive any benefits from these illicit

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

1  transactions.   To the contrary, the shares sold to these angry shareholders were
2  wrongfully taken from Turan and not fully paid for by the affiliates.

3      84.   Indeed, Nguyen is not the only party to whom Valueluck (and other
4  affiliates of Yuri Vanetik and Tony Vanetik) sold or transferred shares.  On August
5  30, 2006, Turan's then Board of Directors, including Chairman of the Board Tony
6  Vanetik, approved a transfer of 105,000 shares held by Valueluck to Hidden Villa
7  Ranch (100,000 shares) and Zubkoff Living Trust (5,000 shares).  As part of the
8  same Board action, the Board (again, including Chairman Tony Vanetik) approved
9  transfers by Hiep Trinh (10,000 shares to Joseph Phan) and Mitch Ngo (25,000
10  shares to Cuong Manh Do).

11     85.   The stock transfer forms for these transactions were signed on behalf
12  of Valueluck by Tony Vanetik, upon information and belief, establishing that he
13  too had the power to bind Valueluck.   Tony Vanetik also signed on behalf of
14  Valueluck the instruction letter, dated September 1, 2006, to Turan's transfer agent
15  concerning these transfers, upon information and belief.   The transfer agent
16  instruction letter, Valueluck stock certificate and, transfer forms were sent via
17  overnight mail and faxed to the transfer agent and the transactions were
18  consummated.  As Turan's transfer agent (Empire Stock Transfer, Inc.) has been
19  located in Las Vegas, Nevada, during all relevant times, all stock transfers
20  referenced herein were effected via the mails.

21     86.   On November 21, 2006, Valueluck and American Heritage Funding,
22  LLC, which is also controlled by Tony Vanetik, transferred a total of 250,000
23  shares of Turan to Kosti Shirvanian (150,000 from Valueluck) and Leonid Fridman
24  (100,000 from American Heritage).  Turan's transfer agent received an instruction
25  letter for these transfers, dated November 16, 2006, apparently signed by Robert
26  Van Duren (Turan's only other director, until new management was installed).
27  The Irrevocable Stock Power Form for the Valueluck transfer appears to have been
28  signed by "Petrosov" on behalf of Valueluck, on this particular occasion.

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 S SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

87.   In another dubious transaction involving Yuri Vanetik's Turan stockholdings, with Valueluck as the depository of investor proceeds, Yuri Vanetik told a prospective investor about Turan.   Specifically, Yuri Vanetik told prospective investor Mubashir Kazi that he (Kazi) could purchase Turan shares before it commenced a private placement, upon information and belief.   Yuri Vanetik told Kazi that he had some "friend and family" shares that Kazi could purchase.

88.   Yuri Vanetik then sold to Kazi 40,000 of his own personally held shares at $1.25 per share on or about September 27, 2005, upon information and belief.  Kazi paid Yuri Vanetik via bank checks made payable to "Valueluck."  In order to induce Kazi to purchase these shares, Yuri Vanetik arranged for Kazi's shares to be sold to other investors at prices as high as $12.50 per share through a broker named Signature Investments, upon information and belief.  The subsequent sales through Signature Investment were to investors who apparently believed they were purchasing shares directly from Turan.   However, Turan received nothing of value from any of these transactions.  To the contrary, Turan must now deal with these angry shareholders who have threatened litigation based on actions by Yuri Vanetik and other Defendants.

89.   Valueluck continues to hold a total of 2,560,000 shares of Turan stock.  All of these shares were obtained by Valueluck through fraudulent and deceptive devices and were not fully paid for, upon information and belief. Moreover, Valueluck's stockholdings have substantially diluted Turan's stock, impeding Turan's ability to raise capital and obtain credit, and injuring Turan's shareholders.

## 2.   The Essex Transactions

90.   Defendant Essex is a British Virgin Islands corporation and is controlled, by Yuri Vanetik, Tony Vanetik and possibly others.  Essex has owned up to 4,745,000 shares of Turan, which were not fully paid for, upon information

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

1   and belief, and as more fully described below. Essex sold 1,000,000 of its shares,

2   realizing profits totaling $3,000,000, as also described below.

3        91.   In July 2005, 3,500,000 shares of Turan stock were transferred from

4   Turan to Essex under dubious circumstances and were not fully paid for, upon

5   information and belief. On July 6, 2005, Yuri Vanetik received an email attaching

6   a "draft instruction letter and board resolution regarding the deal with Essex." The

7   Draft Instruction Letter provides, as "Contact information" for Essex, "Attention

8   Yuri Vanetik, Esq . . ." and provides a telephone number which was and is Tony

9   Vanetik's cell phone number. The Draft Board Resolution describes a transaction

10  in which Essex would purchase up to 10,000,000 shares of Turan stock at $6.00

11  per share, "payable in a combination of cash and the provision of financial

12  consulting services relating to the raising of capital for [Turan] outside of the

13  United States" and Essex would receive 5,000,000 shares of Turan immediately.

14       92.   Tony Vanetik had, at one point, directed that eleven (11) stock

15  certificates be issued to Essex, totaling 11,600,000 shares, as reflected in an email

16  dated July 4, 2005:

17            "Bob,

18            Here is what we need to have [the transfer agent] perform for us asap.

19            …

20       2.     Essex Managers Limited

21            Shares –     5,000,000

22                         3,000,000

23                         1,000,000

24                         1,000,000

25                         1,000,000

26                           200,000

27                           100,000

28                           100,000

**COMPLAINT FOR RELIEF**

50,000

50,000

Total – 11,600,000...."

93.    On July 12, 2005, Turan issued to Essex 3,500,000 million shares of stock pursuant to an Action by Written Consent, dated July 11, 2005, that was signed by Tony Vanetik (hereinafter, the "July 2005 Board Action").   The per share price in the July 2005 Board Action was lowered from $6.00 per share to $1.75 per share, resulting in Essex having received at least **$6,125,000.00** (i.e., $1.75 times 3,500,000) in Turan shares.   The July 2005 Board Action states that the $6,125,000.00 purchase price is payable in a combination of cash and "financial consulting services" ostensibly relating to raising foreign capital.

94.    On or about July 12, 2005, an instruction letter was sent to Turan's transfer agent which includes the same reference to Yuri Vanetik and to Tony Vanetik's cell phone number as in the Draft Board Resolution, and requests that the transfer agent issue the 3,500,000 shares to Essex in six (6) separate stock certificates of varying amounts.

95.    Turan did not receive anything of value from Essex in exchange for the 3,500,000 shares issued to Essex, upon information and belief.  The 3,500,000 issued to Essex was one of a number of sham or "parking" transactions orchestrated by Tony Vanetik and Yuri Vanetik to facilitate their receipt of additional illicit profits at the expense of Turan, upon information and belief. Moreover, Turan certainly did not receive consideration valued at $6,125,000.00, as required by the agreement.   Outrageously, Tony Vanetik caused Turan's accounting records to reflect a journal entry indicating a payable of $350,000.00 *to Essex*, for July 12, 2005.  Clearly, Turan owes no such amount to Essex.

96.    To the contrary, because the shares Essex received were not fully paid for, they should be cancelled or, alternatively, Essex should be required to pay the agreed-upon purchase price (i.e., $6,125,000.00).  Indeed, this large block of "free"

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

- 30 -

stock that Essex received has resulted in dilution of Turan's shares, injuring both Turan and its shareholders.

97.   During the period from about September 2005 through May 2008, Essex received an additional 1,245,000 shares of Turan stock from Hiep Trinh (1,120,000) and two of the above-referenced phantom "founders" of Elite Registry, i.e., Manley Gray II (75,000) and Franklin Wolfson (50,000). This was in addition to the 3,500,000 shares of "free" Turan stock it received in July 2005.

98.   On or about May 9, 2008, the same day on which Essex received an additional 870,000 shares from Hiep Trinh, Essex transferred 1,000,000 shares as follows:  to Sam Lee (316,667), to MJ Capital (525,000) and to Steve Hwang (158,333).

99.   Sam Lee had previously expressed an interest in investing in Turan to Askar Karabayev (Turan's current President and a director).  Sam Lee and Askar Karabayev had a pre-existing relationship based on prior dealings.  At the time, Turan was in dire need of capital and stood ready to sell shares to Sam Lee in a private placement transaction.  Consequently, Askar Karabayev (who was about to leave for Kazakhstan on an extended trip concerning Turan business) introduced Sam Lee to Tony Vanetik and Hiep Trinh to facilitate this private placement and obtain much needed capital for Turan.

100.   In breach of his fiduciary duty to Turan and in usurpation of a corporate opportunity, Tony Vanetik sold Sam Lee shares held by Essex, instead of selling newly issued Turan shares to Sam Lee (which would have provided Turan with much needed capital).  Sam Lee entered into a Stock Sale Agreement with "Essex Management, Ltd. a Swiss corporation," to purchase 316,667 shares of Turan (hereinafter, the "Essex/Lee Agreement").

101.   Suspiciously, the Essex/Lee Agreement represented that Essex was a *Swiss* corporation, with a Geneva, Switzerland address, while Turan's corporate records clearly indicate it is a British Virgin Islands corporation.  A letter to Yuri

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 S. SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

- 31 -

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

1 Vanetik from a British Virgin Islands licensing company ("Euro-American Trust

2 and Management Services Limited"), dated January 22, 2007, states the following:

3       "Dear Mr. [Yuri] Vanetik:

4       Have your funds been sent? Don't delay send your funds today! The

5       January 31, 2007 deadline is fast approaching. Government imposed

6       penalty of 10% will be increased to 50% after this deadline. ..

7       COMPANY           INVOICE NO.   AMOUNT

8       ESSEX MANAGERS LTD   A-31461       $1525.00

9                           10%  penalty     35.00

10       Only funds stating company name and invoice number can be applied.

11       …

12       Wiring details … First Caribbean International Bank (Cayman)

13       Limited British Virgin Islands. …"

14     102. Essex (instead of Turan) also filled the stock orders of Turan

15 shareholders Steve Hwang (an associate of Sam Lee) and MJ Capital (an affiliated

16 entity of Sam Lee), resulting in more instances of breach of fiduciary duty and

17 usurpation of corporate opportunity by Tony Vanetik. MJ Capital received

18 525,000 shares from Essex, and Steve Hwang received 158,333 shares from Essex.

19     103. Sam Lee, MJ Capital and Steve Hwang paid for their shares via three

20 bank wires, dated February 6, 2008 ($1,000,000.00), May 1, 2008 ($1,250,000.00)

21 and June 19, 2008 ($1,550,000.00), at $3.80 per share, totaling **$3,800,000.00**.

22 This amount is substantially more than the *total* funds *ever* raised by Turan through

23 its private placement! The three wires totaling $3,800,000.00 were sent to a *Swiss*

24 bank account in the name of "Pine Brook," which is controlled by Tony Vanetik

25 and possibly others. Turan received none of these proceeds.

26     104. Essex continues to hold a total of 3,745,000 shares of Turan stock.

27 All of these shares were obtained by Essex through fraudulent and deceptive

28 devices and were not fully paid for, upon information and belief. Moreover,

**COMPLAINT FOR RELIEF**

Essex's stockholdings in Turan continue to substantially dilute Turan's stock, impede Turan's ability to raise capital and obtain credit, and injure Turan's shareholders.

### 3.    The Private Equity Management and Hines Investments, S.A. Transactions

105.   Defendant Private Equity Management, controlled by Defendants Hiep Trinh and Judy Trinh, received **4,240,000 shares** of Turan stock in a series of sham transactions facilitated by Tony Vanetik and Hiep Trinh, among others. In a set of related and convoluted transactions, Defendant Hines Investments, S.A. ("Hines"), ultimately received a total of **2,142,000 shares** of Turan stock (although over 8,000,000 shares actually passed through it). Turan received nothing of value in connection with these transactions that resulted ultimately in Turan's issuance of a total of **6,382,000 shares** of Turan stock to Private Equity Management and Hines. Indeed, these shares were not paid for and should not have been issued. The wrongful issuances have caused substantial damage to Turan and its shareholders, resulting in, among other things, the dilution of Turan stock.

106.   The sham transactions that resulted in Private Equity Management and Hines receiving millions of "free" Turan shares are as follows. During the period from in or about July 2005 through August 2005, Tony Vanetik caused Turan to transfer 24,381,862 shares of its stock to an entity, named Trek Resources, Inc. ("Trek"). Tony Vanetik fraudulently induced Turan to transfer these shares to Trek by misrepresenting to Turan that the shares were to be used to fulfill a certain apparent obligation of Turan to a third party, upon information and belief. However, Tony Vanetik caused these shares to be passed through Trek so that they were not used to satisfy said apparent obligation of Turan. In so doing, Tony Vanetik was not acting on behalf of Turan. Rather, he was acting for his own personal benefit, upon information and belief.

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

107.   On or about October 2007, Tony Vanetik and others caused Trek to transfer 8,382,862 shares to Hines, upon information and belief.   On or about February 19, 2008, Tony Vanetik and others caused Hines to transfer 4,240,000 shares to Private Equity Management, upon information and belief.   Additionally, upon information and belief, on or about March 24, 2008, Tony Vanetik and others caused Hines to transfer 2,000,000 shares to 888 Capital (Miller's company), which transactions are addressed in more detail below.

108.   In what amounted to an unregistered secondary distribution of Turan's stock, Private Equity Management almost immediately re-distributed most of its shares (during March and April 2008) to the public, realizing millions of dollars in profits.   The foregoing transactions are set forth in the following chart (see next page):

///

///

///

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**



**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

109.   As described above, Private Equity Management, acting through Hiep Trinh, sold approximately 3,588,333 of the 4,240,000 "free" Turan shares to the public for a total of approximately **$4,888,333.00**, upon information and belief. Hiep Trinh shared these profits (at least approximately $3,000,000.00) with Tony Vanetik through an entity controlled by Tony Vanetik (Capital Marketing Systems), upon information and belief.

110.   This unregistered secondary distribution by Hiep Trinh, acting through Private Equity Management, was in apparent contravention of state and federal securities registration requirements requiring securities sales agents and public offerings of securities to be registered.   As Hiep Trinh was previously a licensed broker who was subsequently barred by two different regulators for converting customer funds, he was likely aware of the wrongful nature of his conduct, upon information and belief.   Private Equity Management, still controlled by Hiep Trinh and Judy Trinh, currently holds approximately 569,337 shares of Turan stock.

111.   With regard to the specific involvement of the various Defendants in facilitating the foregoing illicit transactions, Tony Vanetik personally handled many of the necessary communications with Turan's transfer agent (Empire Stock Transfer in Nevada), repeatedly utilizing the mails and instrumentalities of interstate commerce.   Tony Vanetik signed and caused an instruction letter to be mailed to Turan's transfer agent on or about February 15, 2008, to enable the transfer of 4,240,000 Turan shares from Hines to Private Equity Management. Tony Vanetik also caused Turan to pay the bill the transfer agent charged for this sham transaction.   Specifically, Tony Vanetik signed a check for $175.00 from Turan's bank account and caused it to be mailed to the transfer agent, along with the transfer agent instruction letter and the corresponding Hines stock certificate.

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

112.   Less than one month later, when Private Equity Management transferred millions of Turan shares to thirteen (13) investors and received millions of dollars in profits, Tony Vanetik mailed an instruction letter (dated March 13, 2008) on behalf of Turan to the transfer agent to effectuate these transactions as well.   Hiep Trinh signed all of the Irrevocable Stock Powers for these transfers, upon information and belief.

113.   One of the investors who received shares from Private Equity Management, Joe Y. Chuang of Delta Fine Chemicals, paid $3,000,000.00 to purchase 1,000,000 Turan shares.  Although this investor received his shares from Private Equity Management, he paid Capital Marketing Systems (an entity controlled, at least in part, by Tony Vanetik) for this purchase.   This investor apparently (erroneously) believed that he was purchasing his shares from Capital Marketing Systems, which is controlled by Tony Vanetik, Yuri Vanetik and others.

114.   Turan has been seriously injured by the foregoing transaction because (1) the shares Turan issued to Private Equity Management, Hines and 888 Capital were not fully paid for, and (2) Tony Vanetik (a corporate officer and director during this time) substantially assisted (and profited) in the usurpation of a corporate opportunity for Turan to privately place its shares and raise much needed capital to pay a multitude of outstanding debts.

### 4.   The Miller/888 Capital Transactions

115.   Miller received 1,600,000 Turan shares in the first major distribution of shares after Elite Registry, Inc. became Turan, on December 14, 2004, as discussed above.  These shares were not fully paid for, upon information and belief and as also discussed above.

116.   In or about March 2005, Miller transferred 375,000 of his shares to Darby Holdings (95,000), Edward C. Davis (200,000), Lee Fjellman (40,000) and Mark Nichols (40,000). Tony Vanetik approved of and facilitated these

**COMPLAINT FOR RELIEF**

1   transactions.  Darby Holdings is a Nevada corporation owned and controlled by

2   Tony Vanetik.

3       117.  In or about April 2005, Turan settled an apparent dispute with Miller

4   at the behest of Turan's only other director, Robert Van Duren ("Van Duren").

5   Van Duren objected to Miller's receipt of the 1,600,000 shares, upon information

6   and belief.  As part of that settlement, Turan was supposed to cancel 1,225,000 of

7   Miller's 1,600,000 Turan shares and, with Miller's assistance, cancel the 375,000

8   shares that had been transferred to Darby Holdings, Edward C. Davis, Lee

9   Fjellman and Mark Nichols.

10      118.  The cancellation of Miller's 1,225,000 shares was carried out by

11   Turan and its transfer agent.  However, the 375,000 shares Miller transferred to

12   Darby Holdings (Tony Vanetik) and the three individuals above, were not

13   cancelled.

14      119.  Moreover, in March 2008, Hines (see above) transferred 2,000,000

15   "free" Turan shares to 888 Capital (i.e., *Miller's* company).  Further, Miller and/or

16   888 Capital received at least $31,000.00 from Turan, ostensibly for acting as a

17   finder.

18      120.  Turan did not receive anything of value from Miller, 888 Capital,

19   LLC, Darby Holdings, Edward C. Davis, Lee Fjellman, Mark Nichols or Hines in

20   exchange for the foregoing shares they received.  Yet, through 888 Capital, LLC,

21   Miller continues to own and/or control 2,000,000 shares of Turan, which were not

22   fully paid for.  The foregoing fraudulent activities have damaged Turan and its

23   shareholders by causing substantial dilution to Turan's stock.

24      **5.  The Pine Brook Transactions**

25      121.  Pine Brook, controlled by Tony Vanetik and possibly others, received

26   300,000 shares from Turan, for which Turan received no consideration whatsoever,

27   upon information and belief.   Specifically, on or about March 24, 2008, Turan

28   issued 300,000 shares to Pine Brook.

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

122.  On or about April 17, 2008, Pine Brook sold 750,000 of its Turan shares to the Elizabeth Fago Revocable Trust ("Fago Trust").  In exchange, Pine Brook received hundreds of thousands of dollars (and possibly more), upon information and belief.

123.  Turan has been seriously injured by the foregoing transactions because the shares it issued to Pine Brook were not fully paid for and resulted in further dilution of Turan's stock.

### C.  Misuse and Commingling of Turan's Funds

124.  Defendant Tony Vanetik misappropriated Turan's funds and used them to pay for his personal expenses, various business ventures unrelated to Turan, personal expenses incurred by his son (Defendant Yuri Vanetik) and other improper purposes, as detailed in **Schedule A**, attached hereto as **Exhibit A** and incorporated herein by reference.  Tony Vanetik converted Turan's funds directly from Turan's operating bank account at Wells Fargo (hereinafter, the "Turan Bank Account") during the period from about June 2005 to April 2008.  During all relevant times, Tony Vanetik controlled the Turan Bank Account and the funds deposited in that account were Turan's.  Tony Vanetik caused numerous bank checks and wire transfers to be drawn on the Turan Bank Account for various purposes that were not for the benefit of Turan.

125.  As detailed in **Exhibit A**, approximately **$1,402,056.00** was converted from the Turan Bank Account by Tony Vanetik.  Most of these funds were misused by Tony Vanetik to pay NRG's business expenses, such as NRG's payroll, lawyers, auditors, consultants, business projects, and office equipment and supplies.  During all relevant times, NRG has been controlled and owned by Tony Vanetik and Hiep Trinh.  By February 28, 2006, NRG acquired a wholly owned subsidiary, NRG Resources Kazakhstan, Inc., whose principal activity is the exploration of oil and gas in Kazakhstan, i.e., precisely the same business as Turan

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

and in the same country that Turan has its Concession (Kazakhstan)!  In a press release dated February 28, 2006 (the "NRG Press Release"),  NRG stated:

> "[NRG] today announced that it has formed NRG Resources Kazakhstan, Inc., a Nevada corporation, to hold its ownership in Munaisystem INK. Kazakhstan-based Munaisystem INK owns a potentially highly lucrative license to explore for oil and gas in Kazakhstan's oil-rich Aral Sea region. ...

> ... Initial independent geological studies have been completed on the properties that indicate the significant potential of recoverable oil and gas. Geotex OJSC has performed geophysical work (150 km of 2D seismic surveys from 1989 through 1991, and in 1998). ...

> 'The studies are still in a relatively early phase, but indicate promise,' stated NRG Chairman and Chief Executive Officer, Tony Vanetik."

126.   Hiep Trinh was listed as one of the "Company Contacts" on the NRG Press Release.

127.   At the time the NRG Press Release was issued, Tony Vanetik was converting funds from the Turan Bank Account and using Turan's funds for a company (i.e., NRG) that was an actual or potential competitor of Turan! Moreover, as Tony Vanetik was an officer and director of Turan during this time, this was a gross breach of his fiduciary duty to Turan (in addition to a fraud).

128.   Tony Vanetik also misused funds in the Turan Bank Account to pay for, among other things, his other business projects, a Brabus Mercedes, a UTV Harley Roadster and Danny Rowe Racing (a high performance race car team, which *NRG* was sponsoring).

129.   Additionally, Tony Vanetik withdrew approximately **$146,579.00** in cash from the Turan Bank Account on or about January 8, 2007 ($44,500.00), June 25, 2007 ($52,079.82) and June 29, 2007 ($50,000.00).  During the period of Tony Vanetik's exclusive (or nearly exclusive) management of Turan (while President,

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

- 40 -

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

1  approximately April 2001 to June 2008), no corporate records appear to have been
2  kept identifying the purpose for which those funds had been withdrawn.  Further,
3  on a number of occasions, Tony Vanetik directed an NRG employee (Len Futaba)
4  to write a check to himself (Len Futaba), cash the check and then give all of the
5  cash to Tony Vanetik, on information and belief.

6      130.  On or about January 8, 2008, Tony Vanetik entered into a contract
7  with IFM Resources, Inc., on behalf of both NRG and Turan (hereinafter "IFM
8  Agreement").  Tony Vanetik signed as Chairman & CEO of NRG and as Chairman
9  & CEO of Turan.  The agreement states that IFM will provide "advisory services"
10 to NRG (referred to as "CLIENT"), Turan and "their affiliated entities," including
11 raising $50 million each for NRG and Turan.  Although Turan never received
12 anything of value from IFM, Tony Vanetik caused Turan to transfer $50,000.00 to
13 IFM on or about January 10, 2008.

**D.  Tony Vanetik Causes Turan to Issue "Free" Stock Options for Millions of Shares of Turan Stock, Causing Further Potential Dilution of Turan's Stock**

17     131.  Over the years during which he managed Turan exclusively (or nearly
18 so), Tony Vanetik caused Turan to issue stock options that were never fully paid
19 for and for which Turan never received anything of material value as follows:

| | Optionholder | Approx. Date Issued | Amount | Strike Price | Expiration Date |
|---|---|---|---|---|---|
| 1. | Tony Vanetik | 3/2008 | 5,000,000 | $1.10 | 12/31/2012 |
| 2. | Tony Vanetik | Unknown | 5,000,000 | $1.21 | 12/31/2012 |
| 3. | Essex | 7/2005 | 3,000,000 | $1.10 | 12/31/2010 |
| 4. | Essex | 7/2005 | 500,000 | $1.10 | 12/31/2010 |
| 5. | Hiep Trinh | 3/2008 | 1,000,000 | $1.10 | 12/31/2012 |
| 6. | Hiep Trinh | 3/2008 | 1,000,000 | $1.10 | 12/31/2012 |
| 7. | Yuri Vanetik | 3/2006 | 2,000,000 | $1.21 | 12/31/2012 |

**COMPLAINT FOR RELIEF**

| | | | | | |
|---|---|---|---|---|---|
| 8. | Jane M. Christie (NRG officer) | 4/5/08 | 50,000 | $3.00 | 12/31/2012 |
| 9. | Haneczka Czernyszczerniach (NRG employee) | 3/1/08 | 150,000 | $3.00 | 12/31/2012 |
| 10. | Sherry Moffett (NRG CFO) | 3/1/08 | 150,000 | $3.00 | 12/31/2012 |
| 11. | John Kheit | Unknown | 11,333 | $3.00 | 12/31/2012 |

132.   Tony Vanetik caused Turan to issue the foregoing stock options, despite the fact that he knew Turan did not received consideration therefore, upon information and belief.

**E.     "Upon Information and Belief" Allegations**

133.   Upon information and belief, certain facts regarding the foregoing scheme among Defendants are exclusively within the Defendants' possession, including emails, telephone records, corporate records, bank records and notes of conversations.

134.   Moreover, the allegations of misconduct occurred while *former* management controlled Turan.  Further, *current* management has repeatedly asked Tony Vanetik (a current Turan director) to explain the multiple instances of misuse of Turan funds, the "free" Turan shares issued to multiple persons, the repeated usurpation of corporate opportunities by Tony Vanetik and the other instances of apparent misconduct detailed herein.   In response to current management's repeated requests to Tony Vanetik to answer questions regarding the activities described herein, Tony Vanetik employed evasive tactics and ultimately would not answer specific questions for which current management repeatedly tried to get answered.

135.   For example, Tony Vanetik would agree to a given date for a meeting to discuss these issues and then cancel it.   When current management tried to reschedule, Tony Vanetik would not cooperate.   In other instances, Tony Vanetik

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
Los Angeles, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

1    would say, "I don't have to answer that question," or words to that effect.  In

2    another example, current management asked Tony Vanetik to answer questions

3    regarding Turan's financials.  In response, Tony Vanetik stated, "we are a small

4    exploration company and we do not need to keep the financials," or words to that

5    effect.

6        136.   With regard to the "parking" transactions and sham transactions

7    detailed above, current management tried to get information from Turan's stock

8    transfer agent (Empire Stock Transfer).    The transfer agent told current

9    management that all of the transfers were done at the behest of Tony Vanetik.

10   Current management then asked Tony Vanetik about the questionable transfers,

11   and Tony Vanetik would not provide answers.

12       137.   Current management has also been besieged by calls from

13   shareholders complaining about discrepancies in the stock certificates they

14   received and/or that they never received their certificates at all. The transfer agent

15   told current management that the transactions in question were all done at the

16   behest of Tony Vanetik.  When current management approached Tony Vanetik

17   about these troubling stock transfer issues, Tony Vanetik would not provide

18   answers.

19       138.   Further, current management has repeatedly asked Tony Vanetik for

20   all of Turan's corporate records that were in his possession, custody or control (as

21   Tony Vanetik controlled and managed Turan until June 2008).    Current

22   management initially made this request to Tony Vanetik on or about June 5, 2008.

23   Following repeated requests for these documents by current management, Tony

24   Vanetik eventually produced certain documents on September 25, 2008 (through

25   his counsel), over three and one-half months later.  The documents did not contain

26   the answers to any of the pressing questions current management had been

27   repeatedly asking of Tony Vanetik and the production appeared otherwise

28   deficient.

**COMPLAINT FOR RELIEF**

139.   In addition, with regard to the multiple issuances of "free" Turan stock and subsequent sales (detailed above), these activities were perpetrated by persons who are uncooperative, fictitious and/or otherwise unavailable.  However, further evidence that is in the exclusive possession or control of Defendants and others can be obtained through discovery such as bank records, emails, correspondence, phone records and sworn statements of uncooperative individuals.

140.   Similarly, with regard to the allegation of misuse of Turan funds, these activities were perpetrated by persons who are uncooperative, fictitious and/or otherwise unavailable.   However, evidence that is in the exclusive possession or control of Defendants and others can be obtained through discovery such as bank records, emails, correspondence, phone records and sworn statements of uncooperative individuals.

141.   Further, the allegations relating to multiple stock transfers that are alleged to be fraudulent point to coordinated activity for which there are likely to be documents evidencing communications among the Defendants and other persons including but not limited to emails, correspondence (including faxes), and telephone conversations.

142.   Notwithstanding the foregoing, allegations based upon information and belief (because they are based on hearsay) are based on, among other things: (1) transfer agent records; (2) bank records (account statements, cancelled checks, bank wires, etc.); (3) current managements' interviews of the transfer agent, Turan shareholders, former NRG staff and others; (4) invoices reflecting expenses of NRG that were paid for by Turan; (5) emails; and (6) various corporate records.  In addition, conspicuously *absent* from Turan's corporate records are documents showing Turan's receipt of any so-called "consulting" services or other benefit by the Defendants that received millions of shares of Turan stock (many of which were, in turn, sold for millions of dollars), plus options in some cases (as described above).

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

1

2

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Securities Fraud – Section 10(b) of the Securities**

**Exchange Act of 1934 and Rule 10b-5 Thereunder**

*(Against Defendants Yuri Vanetik, Tony Vanetik, Hiep Trinh,*

*Miller, NRG, Valueluck, Essex, Capital Marketing Systems,*

*Private Equity Management, 888 Capital, American Heritage*

*Funding, Archer Resources, and Pine Brook )*

143.   Turan incorporates by reference each allegation set forth above as if fully set forth herein, and further alleges as follows:

144.   This cause of action is asserted against Defendants Yuri Vanetik, Tony Vanetik, Hiep Trinh, Miller, NRG, Valueluck, Essex, Capital Marketing Systems, Private Equity Management, 888 Capital, American Heritage Funding, Archer Resources, and Pine Brook.

145.   Defendants Yuri Vanetik, Tony Vanetik, Hiep Trinh, Miller, NRG, Valueluck, Essex, Capital Marketing Systems, Private Equity Management, 888 Capital, American Heritage Funding, Archer Resources, and Pine Brook, singly and in concert, by the use and means of instrumentalities of interstate commerce and/or the mails, engaged in a common plan, scheme and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of conduct that operated as a fraud and deceit upon Plaintiff Turan.

146.   The purpose and effect of said scheme, plan, and unlawful course of conduct was, among other things, to induce Turan to issue millions of shares of stock in exchange for services that it never received, as described with particularity above.  This scheme, plan and unlawful course of conduct included, among other things, Defendants' use of fictitious corporate "founders," forged stock powers,

COMPLAINT FOR RELIEF

stock transfers without the knowledge of the person on the stock certificates, "parking" shares in the name of unwitting individuals, transfers of millions of dollars to overseas bank accounts, all to the detriment of Turan and for the benefit of Defendants, as described with particularity above.

147. Each Defendant variously received Turan stock, directly or indirectly, that was fraudulently obtained from Turan and/or received the benefit of subsequent lucrative sales of said stock, either directly or indirectly, as described with particularity above.

148. Defendants purchased their Turan stock in exchange for services they were purportedly to provide to Turan. However, Defendants did not provide any such services to Turan, nor did they intend to from the outset. Defendants fraudulently obtained their Turan stock with the intention of redistributing the stock to the public and receiving millions of dollars in profits.

149. This scheme, plan, and unlawful course of conduct resulted in substantial damages to Turan, including the substantial dilution of Turan's stock and injury to Turan's reputation. Moreover, these manipulative and deceptive activities substantially impeded Turan's ability to raise capital in a private placement and to obtain credit.

150. By engaging in the actions and courses of conduct alleged herein, Defendants each used a manipulative and deceptive device or contrivance in connection with the purchase and/or sale of Turan's securities and engaged in acts and manipulative practices that were intended by Defendants to operate and did so operate as a fraud or deceit upon Turan, all in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder.

151. As a proximate result of the aforesaid actions, manipulative practices and deceptive device, Plaintiff Turan has suffered damages in an amount to be proven at trial, not less than $15,000,000.00.

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

1    152.   Defendants   performed   these   actions   willfully,   intentionally,

2   maliciously, oppressively and in fraudulent breach of fiduciary duties, warranting

3   the imposition of exemplary damages.

4

5                          **SECOND CAUSE OF ACTION**

6                           **Breaches of Fiduciary Duty**

7          **Constructive Trust and Accounting of Proceeds of Stock Sales**

8   *(Against Defendants Tony Vanetik, Yuri Vanetik and Hiep Trinh for Breaches;*

9          *against all Defendants for imposition of Constructive Trust )*

10          153.   Turan incorporates by reference each allegation set forth above as if

11  fully set forth herein, and further alleges as follows:

12          154.   There existed at all relevant times a fiduciary relationship between

13  Defendant Tony Vanetik and Plaintiff Turan.   There existed at certain relevant

14  times a fiduciary relationship between Yuri Vanetik and Turan and between Hiep

15  Trinh and Turan.

16          155.   As a director and (until July 2008) President of Turan, Tony Vanetik

17  at all relevant times owed Turan fiduciary duties of loyalty and good faith. Tony

18  Vanetik was required to use his utmost ability to control and manage Turan in a

19  fair, just, honest and equitable manner.   Tony Vanetik was required to act in

20  furtherance of the best interest of Turan so as to benefit all shareholders equally

21  and not in furtherance of his own personal interest or benefit.

22          156.   As Secretary of Turan (until October 2001), Yuri Vanetik at certain

23  relevant times owed Turan fiduciary duties of loyalty and good faith. Yuri Vanetik

24  was required to use his utmost ability to manage Turan in a fair, just, honest and

25  equitable manner.   Yuri Vanetik was required to act in furtherance of the best

26  interests of Turan so as to benefit all shareholders equally and not in furtherance of

27  his own personal interest or benefit.

28

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

1   157.   As Secretary/Treasurer of Turan (from May 2008 through June or July
2   2008), Hiep Trinh at certain relevant times owed Turan fiduciary duties of loyalty
3   and good faith. Hiep Trinh was required to use his utmost ability to manage Turan
4   in a fair, just, honest and equitable manner.   Hiep Trinh was required to act in
5   furtherance of the best interests of Turan so as to benefit all shareholders equally
6   and not in furtherance of his own personal interest or benefit.

7   158.   Defendant Tony Vanetik, because of his authority as director and/or
8   officer of Turan, was able to and did exercise control over the wrongful issuance of
9   Turan stock to himself and all other Defendants to facilitate an illegal secondary
10   distribution of Turan stock.   Turan received no benefit from these illicit sales of
11   unregistered securities.

12   159.   In doing so, Tony Vanetik, personally and through his affiliated
13   entities, intentionally diverted and usurped several corporate opportunities that
14   clearly belonged to Turan, those being opportunities for Turan to raise sorely
15   needed capital for its operations. Turan had a legitimate interest and expectation in
16   raising capital from the sale of its own stock and could have issued such stock to
17   fulfill the demand thereof.

18   160.   By virtue of Defendant Tony Vanetik's violation of the relationship of
19   trust and confidence existing at all relevant times between Turan and himself and
20   by virtue of the similar violations (usurpations of corporate opportunity) of trust
21   and confidence existing at certain relevant times between Defendant Yuri Vanetik
22   and Turan and Defendant Hiep Trinh and Turan, Tony Vanetik and all other
23   Defendants hold any and all proceeds received from the usurpation of Turan's
24   corporate opportunities as constructive trustees for the benefit of Turan.

25   161.   Turan in fact placed confidence and reliance in these three
26   Defendants, especially Tony Vanetik, at all relevant times. Turan did not discover
27   the fraud and deceit of Tony Vanetik until sometime after its new officers
28

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

1  (including a new President of Turan, replacing Tony Vanetik) came on in June

2  2008.

3      162.   Turan does not know the full amount of proceeds received by

4  Defendants (all Defendants herein, not only the three Defendants above), though

5  the amount is <u>at least</u> $15,000,000.00.  An accounting is necessary to determine

6  this amount given the complex nature of the transactions and Turan's lack of

7  access to information under Defendants' control.

8      163.   Defendants Tony Vanetik, Yuri Vanetik and Hiep Trinh performed

9  these actions willfully, intentionally, maliciously, oppressively and in fraudulent

10 breach of their fiduciary duties, warranting the imposition of exemplary damages.

11     164.   Turan also requests that the Court issue an order removing Defendant

12 Tony Vanetik as a director of Turan.  Turan further requests that such order

13 permanently bar Tony Vanetik from re-election to the office of director.

14     165.   Turan also requests that the Court issue an order cancelling all shares

15 of Turan stock improperly issued to any Defendant and all Turan stock options

16 improperly issued to any Defendant.

17

18 **THIRD CAUSE OF ACTION**

19 **Conversion and Embezzlement**

20 **Constructive Trust and Accounting of Funds**

21 ***(Against Defendants Tony Vanetik, Yuri Vanetik, Hiep Trinh and NRG)***

22     166.   Turan incorporates by reference each allegation set forth above as if

23 fully set forth herein, and further alleges as follows:

24     167.   There existed at all relevant times a fiduciary relationship between

25 Defendant Tony Vanetik and Plaintiff Turan.  There existed at certain relevant

26 times a fiduciary relationship between Yuri Vanetik and Turan and between Hiep

27 Trinh and Turan.

28

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

- 49 -

**COMPLAINT FOR RELIEF**

168.   As a director and officer of Turan, Tony Vanetik was in a position to control, and did control, Turan's accounting and funds.  While President of Turan (and director thereof, in which position he continues today), Tony Vanetik was completely in charge of maintaining the business accounts and business records of Turan, with any assistants thereto serving entirely at Tony Vanetik's direction.

169.   During the period of his management, Tony Vanetik converted and embezzled Turan's funds by means of paying personal expenses and those of NRG and his other businesses, his son and co-conspirator Yuri Vanetik and his co-conspirator Hiep Trinh.  Tony Vanetik also paid Turan funds to himself, directly and indirectly, and otherwise misappropriated and converted Turan funds to his personal use and possession, as well as that of his business entities without Turan's knowledge or consent, the sum of at least $1.4 million, all of which sum belonged to Turan.

170.   By virtue of Tony Vanetik's wrongful acts, he and Defendants Yuri Vanetik, Hiep Trinh and NRG hold the converted funds, in the amount of at least $1.4 million, as constructive trustees for the benefit of Turan.  Turan does not know the full amount of funds received by the abovementioned Defendants.  An accounting is necessary to determine this amount given the complex nature of the transactions and Turan's lack of access to Defendants' records.

171.   Turan in fact placed confidence and reliance in these three Defendants, especially Tony Vanetik, at all relevant times.  Turan did not discover the fraud and deceit until sometime after its new officers (including a new President of Turan, replacing Tony Vanetik) came on in June 2008.

172.   Defendants Tony Vanetik, Yuri Vanetik and Hiep Trinh performed these actions willfully, intentionally, maliciously, oppressively and in fraudulent breach of their fiduciary duties, warranting the imposition of exemplary damages.

///

///

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

COMPLAINT FOR RELIEF

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

173.   Turan also requests that the Court issue an order removing Defendant Tony Vanetik as a director of Turan.   Turan further requests that such order permanently bar Tony Vanetik from re-election to the office of director.

## FOURTH CAUSE OF ACTION

### Constructive Fraud

### *(Against Defendants Tony Vanetik, Yuri Vanetik and Hiep Trinh)*

174.   Turan incorporates by reference each allegation set forth above as if fully set forth herein, and further alleges as follows:

175.   There existed at all relevant times a fiduciary relationship between Defendant Tony Vanetik and Plaintiff Turan.   There existed at certain relevant times a fiduciary relationship between Yuri Vanetik and Turan and between Hiep Trinh and Turan.

176.   In violation of these relationships, Tony Vanetik, Yuri Vanetik and Hiep Trinh abused the trust and confidence of Turan by the following:

(a)   By virtue of the usurpations of corporate opportunities by Defendants Tony Vanetik, Yuri Vanetik and Hiep Trinh, in violation of their fiduciary duties to Turan;

(b)   By virtue of the conversion and embezzlement and wrongful receipt of Turan funds by Tony Vanetik, Yuri Vanetik, Hiep Trinh and NRG; and

(c)   By virtue of the conspiracy among Tony Vanetik, Yuri Vanetik, Hiep Trinh and all other Defendants to defraud Turan and conceal their frauds and violations of securities law from Turan.

177.   These three Defendants did the acts herein alleged with the intent to deceive and defraud Turan, and employed the following devices to conceal from Turan their frauds: (a) refusing to provide information regarding these matters to Turan's new management after repeated inquiry; (b) using fictitious corporate "founders," forged stock powers, fraudulent stock transfers, and "parking" shares

**COMPLAINT FOR RELIEF**

1  in the name of unwitting shareholders; (c) using vague and misleading accounting

2  labels to hide co-mingling, misappropriation, conversion and embezzlement of

3  funds of Turan.  These three Defendants did these acts with the intent to induce

4  reliance by Turan in the fidelity of Yuri Vanetik and Hiep Trinh, but especially in

5  Tony Vanetik as President (until June 2008) and Chairman of the Board of Turan.

6  178.  Turan in fact placed confidence and reliance in these three

7  Defendants, especially Tony Vanetik, at all relevant times.  Turan did not discover

8  the fraud and deceit until sometime after its new officers (including a new

9  President of Turan, replacing Tony Vanetik) came on in June 2008.

10  179.  As a result of the fraud of these Defendants as herein alleged, Turan

11  has been damaged in the sum of <u>at least</u> $16.4 million.  However, an accounting is

12  necessary to determine this amount given the complex nature of the transactions

13  and Turan's lack of access to information under Defendants' control.

14  180.  Defendants Tony Vanetik, Yuri Vanetik and Hiep Trinh performed

15  these actions willfully, intentionally, maliciously, oppressively and in fraudulent

16  breach of their fiduciary duties, warranting the imposition of exemplary damages.

17  181.  Turan also requests that the Court issue an order removing Defendant

18  Tony Vanetik as a director of Turan.  Turan further requests that such order

19  permanently bar Tony Vanetik from re-election to the office of director.

20

21  **FIFTH CAUSE OF ACTION**

22  **Civil Conspiracy**

23  *(Against All Defendants)*

24  182.  Turan incorporates by reference each allegation set forth above as if

25  fully set forth herein, and further alleges as follows:

26  183.  On or about April 10, 2001, the time of the initial fraudulent grant of

27  "founders" shares of Turan (then Elite Registry, Inc.), Defendants Tony Vanetik,

28  Yuri Vanetik, Hiep Trinh and Valueluck knowingly and willfully conspired to

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

1   defraud, and they did defraud, Turan of its assets in violation of Tony Vanetik's

2   and Yuri Vanetik's fiduciary duties (and, eventually, Hiep Trinh's fiduciary

3   duties).

4        184.   This scheme involved the use of fictitious corporate "founders,"

5   forged stock powers, fraudulent stock transfers, "parking" shares in the name of

6   unwitting shareholders, transfers of millions of dollars to overseas bank accounts,

7   all to the detriment of Turan and for the benefit of Defendants, all other Defendants

8   having subsequently entered into the conspiracy, as described with particularity

9   above.

10       185.   Turan is informed and believes and thereon alleges that the last overt

11  act in pursuance of the above-described conspiracy occurred on or about  May 9,

12  2008, when Essex received an additional 870,000 shares from Hiep Trinh.  Essex

13  then transferred 1,000,000 shares as follows:  to Sam Lee (316,667), to MJ Capital

14  (525,000) and to Steve Hwang (158,333).  As detailed above (see Paragraph 98

15  and following paragraphs), the co-conspirators collected investment funds that

16  should have gone to Turan.

17       186.   Turan in fact placed confidence and reliance in Defendants Tony

18  Vanetik, Yuri Vanetik and Hiep Trinh, at all relevant times.   Turan did not

19  discover the fraudulent conspiracy until sometime after Turan's new officers

20  (including a new President of Turan, replacing Tony Vanetik) came on in June

21  2008.

22       187.   As a result of the conspiracy of the Defendants as herein alleged,

23  Turan has been damaged in the sum of at least $15,000,000.00.  However, an

24  accounting is necessary to determine this amount given the complex nature of the

25  transactions and Turan's lack of access to information under Defendants' control.

26       188.   Defendants Tony Vanetik, Yuri Vanetik, Hiep Trinh and all

27  Defendants herein, as co-conspirators, performed these actions willfully,

28

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

1    intentionally, maliciously, oppressively and in fraudulent breach of fiduciary
2    duties, warranting the imposition of exemplary damages.

3    189.   Turan also requests that the Court issue an order removing Defendant
4    Tony Vanetik as a director of Turan.   Turan further requests that such order
5    permanently bar Tony Vanetik from re-election to the office of director.

6    190.   Turan also requests that the Court issue an order cancelling all shares
7    of Turan stock improperly issued to any Defendant and all Turan stock options
8    improperly issued to any Defendant.

9

10   ### SIXTH CAUSE OF ACTION

11   **Unfair Business Practices In Violation of**

12   **California Business Professions Code § 17200, *et seq.***

13   ***(Against All Defendants)***

14   191.   Turan incorporates by reference each allegation set forth above as if
15   fully set forth herein, and further alleges as follows:

16   192.   From in or about 2001 through the present, Defendants have
17   committed acts of unfair business practices, as defined by California Business and
18   Professions Code § 17200, *et seq.*, by engaging in the conspiratorial, fraudulent
19   and unlawful practices alleged herein.

20   193.   These acts and practices violate California Business and Professions
21   Code § 17200, because they are unlawful pursuant to Federal securities laws and
22   are otherwise unfair, fraudulent and deceptive.

23   194.   The unlawful, unfair and/or fraudulent business practices of
24   Defendants thus constitute unlawful business acts and practices within the meaning
25   of Business and Professions Code § 17200.

26   195.   Turan in fact placed confidence and reliance in Defendants Tony
27   Vanetik, Yuri Vanetik and Hiep Trinh, at all relevant times.   Turan did not
28   discover the fraudulent acts and unlawful business practices until sometime after

**COMPLAINT FOR RELIEF**

1    Turan's new officers (including a new President of Turan, replacing Tony Vanetik)

2    came on in June 2008.

3    196. As a direct and proximate result of the aforementioned acts, the

4    Defendants received and continue to receive and hold ill-gotten gains resulting

5    from the misconduct alleged herein which properly belongs to Turan. Turan,

6    accordingly, seeks restitution of all such gains, subject to an accounting to

7    determine such amount, but at least $16.4 million.

8    197. Defendants performed these actions willfully, intentionally,

9    maliciously, oppressively and in fraudulent breach of fiduciary duties, warranting

10   the imposition of exemplary damages.

11   198. Turan also requests that the Court issue an order removing Defendant

12   Tony Vanetik as a director of Turan. Turan further requests that such order

13   permanently bar Tony Vanetik from re-election to the office of director.

14   199. Turan also requests that the Court issue an order cancelling all shares

15   of Turan stock improperly issued to any Defendant and all Turan stock options

16   improperly issued to any Defendant.

17

18   **SEVENTH CAUSE OF ACTION**

19   **Interference with Prospective Business Relations**

20   ***(Against All Defendants)***

21   200. Turan incorporates by reference each allegation set forth above as if

22   fully set forth herein, and further alleges as follows:

23   201. Defendants conspired to divert potential Turan investors to purchase

24   shares of Turan from Defendants' own holdings, instead of as direct issuances

25   from Turan. Defendants knew that the investors were interested in purchasing

26   shares directly from Turan and that Turan was in dire need of capital. With that

27   knowledge, Defendants intentionally interfered with Turan's ability to raise capital

28   from investors by diverting them from purchasing shares directly from Turan. The

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

interference by Defendants includes instances in which Defendants fraudulently induced investors to purchase shares from Defendants by falsely representing that such shares were direct issues from Turan.

202.    Turan in fact placed confidence and reliance in Defendants Tony Vanetik, Yuri Vanetik and Hiep Trinh, at all relevant times.    Turan did not discover Defendants' interferences until sometime after Turan's new officers (including a new President of Turan, replacing Tony Vanetik) came on in June 2008.

203.    As a result of the interferences by the Defendants as herein alleged, Turan has been damaged in the sum of at least $15,000,000.00.    However, an accounting is necessary to determine this amount given the complex nature of the transactions and Turan's lack of access to information under Defendants' control.

204.    Defendants Tony Vanetik, Yuri Vanetik, Hiep Trinh and all Defendants herein, as co-conspirators, performed these actions willfully, intentionally, maliciously, oppressively and in fraudulent breach of fiduciary duties, warranting the imposition of exemplary damages.

205.    Turan also requests that the Court issue an order removing Defendant Tony Vanetik as a director of Turan.    Turan further requests that such order permanently bar Tony Vanetik from re-election to the office of director.

206.    Turan also requests that the Court issue an order cancelling all shares of Turan stock improperly issued to any Defendant and all Turan stock options improperly issued to any Defendant.

## EIGHTH CAUSE OF ACTION

### Gross Mismanagement/Corporate Waste

#### (Against Defendants Tony Vanetik, Yuri Vanetik and Hiep Trinh)

207.    Turan incorporates by reference each allegation set forth above as if fully set forth herein, and further alleges as follows:

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

208.   There existed at all relevant times a fiduciary relationship between Defendant Tony Vanetik and Plaintiff Turan.   There existed at certain relevant times a fiduciary relationship between Yuri Vanetik and Turan and between Hiep Trinh and Turan.   These three Defendants had duties to Turan and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Turan.

209.   Moreover, as officers (and director, in Tony Vanetik's case) of Turan during all relevant times, these Defendants were required to, among other things:

(a)   ensure that Tuan complied with its legal obligations and requirements;

(b)   prudently protect Turan's assets;

(c)   conduct the affairs of Turan in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting Turan's assets, and to maximize the value of Turan's stock; and

(d)   ensure that Turan is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

210.   These Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing Turan in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, these Defendants breached their duties of due care, diligence and candor in the management and administration of Turan's affairs and in the use and preservation of Turan's assets.

211.   Turan in fact placed confidence and reliance in Defendants Tony Vanetik, Yuri Vanetik and Hiep Trinh, at all relevant times.   Turan did not discover Defendants' mismanagement and corporate waste until sometime after

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

1  Turan's new officers (including a new President of Turan, replacing Tony Vanetik)

2  came on in June 2008.

3      212.  During the course of the discharge of their duties, these Defendants

4  knew or recklessly disregarded the unreasonable risks and losses associated with

5  their misconduct, yet they engaged in the scheme complained of herein which they

6  knew had an unreasonable risk of damage to Turan, thus breaching their duties to

7  Turan. As a result, they grossly mismanaged Turan and wasted its assets in an

8  amount of <u>at least</u> $16.4 million, subject to an accounting to determine such

9  amount more precisely.

10      213.  Turan also requests that the Court issue an order removing Defendant

11  Tony Vanetik as a director of Turan.  Turan further requests that such order

12  permanently bar Tony Vanetik from re-election to the office of director.

13

14  ### NINTH CAUSE OF ACTION

15  **Unjust Enrichment/Restitution**

16  *(Against All Defendants)*

17      214.  Turan incorporates by reference each allegation set forth above as if

18  fully set forth herein, and further alleges as follows:

19      215.  As a result of the conduct described above, Defendants have been

20  unjustly enriched at the expense of Turan, in the form of misappropriated,

21  converted and embezzled funds, proceeds of fraudulent and unlawful sales of stock

22  and usurpation of Turan's corporate opportunities to raise capital.

23      216.  All of the payments and benefits provided to Defendants were at the

24  expense of Turan.  Turan received no benefit from these payments. Instead, Turan

25  was damaged by such payments.

26      217.  A constructive trust for the benefit of Turan should be imposed upon

27  all amounts wrongfully received by Defendants, subject to an accounting to

28  determine the precise sum.

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

## VI.   **PRAYER**

WHEREFORE, Turan prays for relief as follows:

A.     Awarding money damages against all Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with prejudgment interest, to ensure Defendants do not participate therein or benefit thereby;

B.     Directing all Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all monies and Turan shares received, expenses paid on their behalf, proceeds of stock sales and other related assets and imposing a constructive trust thereon;

C.     Awarding exemplary ("punitive") damages;

D.     Awarding costs and disbursements of this action, including reasonable attorneys', accountants', and experts' fees;

E.     Ordering removal of Defendant Tony Vanetik as a director of Turan. Turan further requests that such order of removal also bar Tony Vanetik from re-election to the office of director for a period of twenty years or such other period as the Court prescribes;

F.     Ordering cancellation of all Turan stock and stock options improperly issued to any Defendant; and

G.     Granting such other and further relief as this Court may deem just and proper.

///
///
///
///
///
///

**COMPLAINT FOR RELIEF**

## On the First Cause of Action

### (Securities Fraud – Section 10(b) of the Securities

### Exchange Act of 1934 and Rule 10b-5 Thereunder)

1. For damages according to proof;

2. For punitive damages;

3. For interest at the maximum legal rate;

4. For the costs of the suit incurred herein; and

5. For such other relief as this Court deems just and proper under the circumstances.

## On the Second Cause of Action

### (Breaches of Fiduciary Duty

### Constructive Trust and Accounting of Proceeds of Stock Sales)

1. For damages according to proof;

2. For imposition of constructive trust;

3. For an accounting of all monies owed Turan;

4. For punitive damages;

5. For interest at the maximum legal rate;

6. For the costs of the suit incurred herein;

7. For an order removing Tony Vanetik as director and permanently barring him from re-election;

8. For an order cancelling all Turan stock and stock options improperly issued to any Defendant; and

9. For such other relief as this Court deems just and proper under the circumstances.

///

///

///

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

## On the Third Cause of Action

### (Conversion and Embezzlement

### Constructive Trust and Accounting of Funds)

1.   For damages according to proof;

2.   For imposition of constructive trust;

3.   For an accounting of all monies owed Turan;

4.   For punitive damages;

5.   For interest at the maximum legal rate;

6.   For the costs of the suit incurred herein;

7.   For an order removing Tony Vanetik as director and permanently barring him from re-election; and

8.   For such other relief as this Court deems just and proper under the circumstances.

## On the Fourth Cause of Action

### (Constructive Fraud)

1.   For damages according to proof;

2.   For imposition of constructive trust;

3.   For an accounting of all monies owed Turan;

4.   For punitive damages;

5.   For interest at the maximum legal rate;

6.   For the costs of the suit incurred herein;

7.   For an order removing Tony Vanetik as director and permanently barring him from re-election; and

8.   For such other relief as this Court deems just and proper under the circumstances.

///

///

**COMPLAINT FOR RELIEF**

1

### On the Fifth Cause of Action

2

### (Civil Conspiracy)

3    1.    For damages according to proof;

4    2.    For an accounting;

5    3.    For punitive damages;

6    4.    For interest at the maximum legal rate;

7    5.    For the costs of the suit incurred herein;

8    6.    For an order removing Tony Vanetik as director and permanently

9          barring him from re-election;

10   7.    For an order cancelling all Turan stock and stock options improperly

11         issued to any Defendant; and

12   8.    For such other relief as this Court deems just and proper under the

13         circumstances.

14

15

### On the Sixth Cause of Action

16

### (Unfair Business Practices)

17   1.    For damages according to proof;

18   2.    For an accounting;

19   3.    For punitive damages;

20   4.    For interest at the maximum legal rate;

21   5.    For reasonable attorneys' fees;

22   6.    For the costs of the suit incurred herein;

23   7.    For an order removing Tony Vanetik as director and permanently

24         barring him from re-election;

25   8.    For an order cancelling all Turan stock and stock options improperly

26         issued to any Defendant; and

27   9.    For such other relief as this Court deems just and proper under the

28         circumstances.

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

**COMPLAINT FOR RELIEF**

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

## On the Seventh Cause of Action

### (Interference with Prospective Business Relations)

1. For damages according to proof;

2. For an accounting of monies lost by Turan;

3. For punitive damages

4. For interest at the maximum legal rate;

5. For the costs of the suit incurred herein;

6. For an order removing Tony Vanetik as director and permanently barring him from re-election;

7. For an order cancelling all Turan stock and stock options improperly issued to any Defendant; and

8. For such other relief as this Court deems just and proper under the circumstances.

## On the Eighth Cause of Action

### (Gross Mismanagement/Corporate Waste)

1. For damages according to proof;

2. For an accounting;

3. For punitive damages;

4. For interest at the maximum legal rate;

5. For the costs of the suit incurred herein;

6. For an order removing Tony Vanetik as director and permanently barring him from re-election; and

7. For such other relief as this Court deems just and proper under the circumstances.

///

///

///

**COMPLAINT FOR RELIEF**

## On the Ninth Cause of Action

### (Unjust Enrichment/Restitution)

1.     For damages according to proof;

2.     For imposition of constructive trust;

3.     For accounting of all monies due to Turan;

4.     For interest at the maximum legal rate;

5.     For the costs of the suit incurred herein; and

6.     For such other relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

DATED: October 23, 2008     FREEMAN, FREEMAN & SMILEY, LLP

By: SYLVIA M. SCOTT
Attorneys for Plaintiff,
Turan Petroleum, Inc.

### JURY DEMAND

Turan hereby requests a trial by jury on all issues so triable.

Respectfully submitted,

DATED: October 23, 2008     FREEMAN, FREEMAN & SMILEY, LLP

By: SYLVIA M. SCOTT
Attorneys for Plaintiff,
Turan Petroleum, Inc.

FREEMAN, FREEMAN & SMILEY, LLP
PENTHOUSE, SUITE 1200
3415 SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

- 64 -

**COMPLAINT FOR RELIEF**

# EXHIBIT A

## SCHEDULE A

## FUNDS CONVERTED FROM THE TURAN BANK ACCOUNT

| | DATE | AMOUNT | RECIPIENT OF TURAN'S FUNDS (If Entity, Control Person(s) also Identified) | NATURE OF MISUSE |
|---|---|---|---|---|
| 1. | 12/12/2005 | $53,000.00 | NRG (Tony Vanetik and Hiep Trinh) | These funds were used for the benefit of NRG. Although they are purported to be for "consulting fees", Turan received no benefit, upon information and belief. |
| 2. | 07/28/2006 09/11/2006 11/21/2006 12/14/2006 02/05/2007 04/25/2006 05/31/2006 05/31/2006 | $51,860.00 | Ren-Cap Holdings (Salvatore Renaldi and Joseph Quinto) | These funds were used to pay "fees" to Ren-Cap to raise funds for both *NRG* and Turan.  In other words, Turan paid NRG's share of the fees as well, upon information and belief. |
| 3. | 10/30/2006 | $3,000.00 | Robert Malasek | These funds were misused to pay for *NRG's* auditor (Malasek). |
| 4. | 11/21/2006 | $3,000.00 | Robert Malasek | These funds were misused to pay for *NRG's* auditor (Malasek). |
| 5. | 09/27/2006 | $3,134.99 | Sherry Moffett | These funds were misused to pay for *NRG's* chief financial officer (Moffett). |
| 6. | 01/10/2008 | $50,000.00 | IFM Resources Inc. (Suresh Chugh) | IFM contracted to raise funds for both *NRG* and Turan.  Turan paid the *entire* cost of the services |

Exhibit A

|     |            |            |                    | rendered by IFM (which in themselves are questionable). |
| --- | ---------- | ---------- | ------------------ | ------------------------------------------------------- |
| 7.  | 10/17/2007 | $5,000.00  | James Wilson       | These funds were misused to pay an *NRG* employee (Wilson). |
| 8.  | 11/13/2007 | $3,500.00  | JAMS               | These funds were misused to pay certain mediation expenses incurred by *NRG's* in connection with a lawsuit (NRG v Bektayev). |
| 9.  | 12/07/2007 | $1,500.00  | Jessie P. Hastings | These funds were misused to repay the spouse of an *NRG* employee relating to a loan to *NRG*. |
| 10. | 12/21/2007 | $1,310.94  | Jessie P. Hastings | These funds were misused to repay the spouse of an *NRG* employee relating to a loan to *NRG*. |
| 11. | 07/21/2006 | $5,000.00  | Len Futaba         | These funds were misused to pay an *NRG* employee (Futaba). |
| 12. | 03/15/2007 | $5,000.00  | Lilia Dmitreba     | These funds were misused to pay the spouse of Alex Sulla (a consultant for NRG). |
| 13. | 05/02/2007 | $7,000.00  | Lilia Dmitreba     | These funds were misused to pay the spouse of Alex Sulla (a consultant for NRG). |
| 14. | 05/02/2007 | $10,000.00 | Lilia Dmitreba     | These funds were misused to pay the spouse of Alex Sulla (a consultant for NRG). |
| 15. | 02/26/2008 | $3,000.00  | Lilia Dmitreba     | These funds were |

Exhibit A

|      |            |             |                                            | misused to pay the spouse of Alex Sulla (a consultant for NRG). |
|------|------------|-------------|--------------------------------------------|----------------------------------------------------------------|
| 16.  | 12/07/2007 | $1,000.00   | Mark Moreno                                | These funds were misused to pay an *NRG* employee (Moreno).    |
| 17.  | 12/10/2007 | $1,000.00   | Mark Moreno                                | These funds were misused to pay an *NRG* employee (Moreno).    |
| 18.  | 01/26/2007 | $4,500.00   | Alex Sulla                                 | These funds were misused to pay a consultant for *NRG* (Sulla). |
| 19.  | 01/17/2008 | $5,000.00   | Alex Sulla                                 | These funds were misused to pay a consultant for *NRG* (Sulla). |
| 20.  | 10/20/2006 | $3,500.00   | William Perez                              | These funds were misused to pay an *NRG* employee (Perez).     |
| 21.  | 01/30/2007 | $11,862.00  | The Institute of Petroleum                 | These funds were misused to pay an expense of *NRG*.           |
| 22.  | 02/10/2008 | $60,000.00  | Danny Rowe Racing                          | These funds were misused to pay a sponsorship expense of *NRG*. |
| 23.  | 11/15/2007 | $15,000.00  | Ngova, LLP (Mitch Ngo & Nicole Vu)         | These funds were misused to pay a consultant for *NRG* (Ngova). |
| 24.  | 01/17/2008 | $3,500.00   | Ngova, LLP (Mitch Ngo & Nicole Vu)         | These funds were misused to pay a consultant for *NRG* (Ngova). |
| 25.  | 08/08/2007 | $3,000.00   | Nicole Vu                                  | These funds were misused to pay a                              |

Exhibit A

| | | | | consultant for *NRG* (Nicole Vu). |
|---|---|---|---|---|
| 26. | 12/21/2007 | $38,000.00 | Greenwald & Hoffman, LLP | These funds were misused to pay legal expenses incurred by *NRG*. |
| 27. | 01/04/2008 | $55,038.52 | Greenwald & Hoffman, LLP | These funds were misused to pay legal expenses incurred by *NRG*. |
| 28. | 01/10/2008 | $5,000.00 | Greenwald & Hoffman, LLP | These funds were misused to pay legal expenses incurred by *NRG*. |
| 29. | 04/02/2008 | $55,000.00 | Greenwald & Hoffman, LLP | These funds were misused to pay legal expenses incurred by *NRG*. |
| 30. | 06/12/2007 | $4,000.00 | Sergy Polyanichkin | These funds were misused to pay expenses incurred in connection with an aluminum project in Kyrgizstan, i.e., a business venture of Tony Vanetik's that was *not* for the benefit of Turan and unrelated to Turan's business. |
| 31. | 06/14/2007 | $9,000.00 | Sergy Polyanichkin | These funds were misused to pay expenses incurred in connection with an aluminum project in Kyrgizstan, i.e., a business venture of Tony Vanetik's that was *not* for the benefit of Turan and unrelated to Turan's business. |
| 32. | 6/15/2007 | $9,000.00 | Sergy Polyanichkin | These funds were misused to pay expenses |

Exhibit A

| | | | | |
|---|---|---|---|---|
| | | | | incurred in connection with an aluminum project in Kyrgizstan, i.e., a business venture of Tony Vanetik's that was *not* for the benefit of Turan and unrelated to Turan's business. |
| 33. | 09/30/2005 | $7,000.00 | Alexander Kushnierenko | These payments were variously misused primarily to pay for expenses incurred in connection with business projects unrelated to Turan, such as Kok Aral, Kulandy and NRG resources. |
| | 11/10/2005 | $3,500.00 | | |
| | 01/18/2006 | $2,500.00 | | |
| | 02/22/2006 | $2,000.00 | | |
| | 03/07/2006 | $1,500.00 | | |
| | 03/20/2006 | $1,500.00 | | |
| | 04/01/2006 | $5,000.00 | | |
| | 04/19/2006 | $3,000.00 | | |
| | 05/15/2006 | $5,000.00 | | |
| | 05/30/2006 | $7,000.00 | | |
| | 06/16/2006 | $4,000.00 | | |
| | 06/28/2006 | $3,000.00 | | |
| | 07/09/2006 | $5,000.00 | | |
| | 07/20/2006 | $10,000.00 | | |
| | 08/02/2006 | $15,000.00 | | |
| | 08/25/2006 | $5,000.00 | | |
| | 09/11/2006 | $14,000.00 | | |
| | 10/10/2006 | $5,000.00 | | |
| | 10/23/2006 | $8,000.00 | | |
| | 11/06/2006 | $18,000.00 | | |

Exhibit A

|     | 03/25/2007 | $8,000.00 |                                                 |                                                                                                                                                              |
| --- | ---------- | ---------- | ----------------------------------------------- | ------------------------------------------------------------------------------------------------------------------------------------------------------------ |
|     | 06/08/2007 | $800.00    |                                                 |                                                                                                                                                              |
|     | 06/26/2007 | $2,000.00  |                                                 |                                                                                                                                                              |
|     | 07/02/2007 | $3,000.00  |                                                 |                                                                                                                                                              |
|     | 11/14/2007 | $650.00    |                                                 |                                                                                                                                                              |
| 34. | 08/05/2007 | $6,000.00  | Turan Trading Corporation (Maurice Frosch)      | These funds were misused to pay for business projects of Tony Vanetik (i.e., *not* for Turan's business).                                                     |
| 35. | 08/15/2007 | $5,000.00  | Turan Trading Corporation (Maurice Frosch)      | These funds were misused to pay for business projects of Tony Vanetik (i.e., *not* for Turan's business).                                                     |
| 36. | 04/01/2006 | $20,000.00 | Valueluck. Com Inc.                             | These funds were variously misused to pay for a Brabus Mercedes, a UTV/Harley Roadster and "consulting" services that Turan did not receive (i.e., *not* for Turan's business). |
| 37. | 04/18/2006 | $20,000.00 | Valueluck. Com Inc.                             | These funds were variously misused to pay for a Brabus Mercedes, a UTV/Harley Roadster and "consulting" services that Turan did not receive (i.e., *not* for Turan's business). |
| 38. | 09/25/2006 | $26,000.00 | Valueluck. Com Inc.                             | These funds were variously misused to pay for a Brabus Mercedes, a UTV/Harley Roadster and "consulting" services that Turan did not receive (i.e., *not* for Turan's business). |
| 39. | 10/31/2006 | $24,000.00 | Valueluck. Com                                  | These funds were                                                                                                                                             |

- 70 -

Exhibit A

| | | | Inc. | variously misused to pay for a Brabus Mercedes, a UTV/Harley Roadster and "consulting" services that Turan did not receive (i.e., *not* for Turan's business). |
|---|---|---|---|---|
| 40. | 10/31/2006 | $90,000.00 | Vanetik & Associates | These funds were variously misused to pay "consulting" services that Turan did not receive. |
| 41. | 12/17/2006 | $20,000.00 | Vanetik & Associates | These funds were variously misused to pay "consulting" services that Turan did not receive. |
| 42. | 10/31/2006 | $30,000.00 | Vanetik & Associates | These funds were variously misused to pay "consulting" services that Turan did not receive. |
| 43. | 10/15/2007 | $50,000.00 | Gintautas Vileita | These funds were misused to pay expenses incurred in connection with an aluminum project in Kyrgizstan, i.e., a business venture of Tony Vanetik's that was *not* for the benefit of Turan and unrelated to Turan's business. |
| 44. | 05/07/2007 | $50,000.00 | Sergey Kushenov | These funds were variously misused to pay for certain services that Turan did not receive. |
| 45. | 01/10/2008 | $1,000.00 | Victor Rubin | These funds were misused to pay a business associate and/or friend of Tony Vanetik, having nothing to do with Turan. |
| 46. | 9/22/2006 | $5,000.00 | Lodestar Management | Biodiesel project in Russia |

Exhibit A

| 47. | 9/22/2006 | $5,000.00 | Lodestar Management | These funds were misused to pay expenses incurred in connection with a Biodiesel project in Russia, i.e., a business venture of Tony Vanetik's that was not for the benefit of Turan and unrelated to Turan's business. |
| 48. | 6/20/2005 – 3/19/2008 | $356,011.82 | American Express (for Tony Vanetik, Yuri Vanetik) | Various charges including – repair of NRG car, CompUSA payments for NRG equipment, NRG internet service payment, Yuri Vanetik's Paypal payments, Office supplies for Yuri Vantek, NRG phone bill payments, DISH network charges, Travel expenses not related to Turan business etc. |
| 49. | 07/12/2006 | $6,000.00 | Franco Safe | These funds were misused to purchase a safe for *NRG*. |
| 50. | 10/12/2005 to 7/27/2006 | $58,888.00 | Chase (Credit Card) | These funds were misused to pay multiple charges of NRG and for personal expenses, such as expenses for NRG equipment (i.e., (CompUSA) and office supplies for NRG. |
| **TOTAL AMOUNT OF TURAN FUNDS THAT WERE *MISUSED* = $1,402,056.20** | | | | |

Exhibit A

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV08- 7017 CBM (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

TURAN PETROLEUM, INC.

PLAINTIFF(S)

V.

Yuri Vanetik; Anatoly ("Tony") Vanetik; Hiep T. Trinh; Dean Miller; Judy
Trinh; Larry Alan Du Vall; NRG Resources, Inc.; Valueluck.com, Inc.; Essex
Managers, Limited; Capital Marketing Systems, Inc.; Private Equity
Management, Inc.; 888 Capital, LLC; American Heritage Funding, LLC;
Archer Resources; Pine Brook, S.A.; Hines Investments, S.A.

and Does 1 through 10, Inclusive,

DEFENDANT(S) .

CASE NUMBER

**CV 08-07017** CBM AJWX

**SUMMONS**

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached [X] complaint [ ] _____ amended complaint
[ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer
or motion must be served on the plaintiff's attorney, SYLVIA M. SCOTT, ESQ. _____ , whose address is
FREEMAN, FREEMAN & SMILEY, 3415 S. SEPULVEDA BLVD., #1200, LOS ANGELES, CA 90034 _____ . If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint. You also must file
your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____**OCT 2 3 2008**____

By: _____

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed
60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    SUMMONS                                    CCD-1A

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a)  PLAINTIFFS** (Check box if you are representing yourself ☐ )<br>TURAN PETROLEUM, INC. | **DEFENDANTS**<br>Yuri Vanetik; Anatoly ("Tony") Vanetik; Hiep T. Trinh; Dean Miller; Judy Trinh; Larry Alan Du Vall; NRG Resources, Inc.; Valueluck.com, Inc.; Essex Managers, Limited; Capital Marketing Systems, Inc.; Private Equity Management, Inc.; et al. |
| **(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):<br>Orange County, California | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
| **(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>SYLVIA M. SCOTT, ESQ. (SBN 134360)<br>RUSSELL R. FISK, ESQ. (SBN 227634)<br>FREEMAN, FREEMAN & SMILEY, LLP<br>3415 S. Sepulveda Blvd., Suite 1200<br>Los Angeles, CA 90034<br>310-255-6100 tel.; 310-391-4042 fx. | Attorneys (If Known) |

**II.  BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III.  CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.  ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V.  REQUESTED IN COMPLAINT:  JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☐ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** at least $16.4 million

**VI.  CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. Sec. 78j.  Scheme to use manipulative and deceptive device in connection with sales of securities

**VII.  NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 790 Other Labor Litig. |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☒ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed?  ☒ No  ☐ Yes
If yes, list case number(s):

| FOR OFFICE USE ONLY: | Case Number: | **CV08-07017** |
|---|---|---|

CV-71 (07/05)                     CIVIL COVER SHEET                     Page 1 of 2
CCD-JS44

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(b).  RELATED CASES:** Have any cases been previously filed that are related to the present case?      [X] No  [ ] Yes

If yes, list case number(s):   *Among the many transactions at issue in this Complaint, a very few of them are referred to in pending state & Federal cases.

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) [ ] A. Arise from the same or closely related transactions, happenings, or events; or

[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above
in a, b or c also is present.

**IX.  VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides  (Use an additional sheet if necessary)

[ ]   Check here if the U.S. government, its agencies or employees is a named plaintiff.

Turan Petroleum, Inc. -- Orange County, California

List the California County, or State if other than California, in which **EACH** named defendant resides.   (Use an additional sheet if necessary).

[ ]   Check here if the U.S. government, its agencies or employees is a named defendant.

Y. Vanetik, A. Vanetik, H.T. Trinh, D. Miller, J. Trinh, NRG Resources, Inc., Capital Marketing Systems, Inc., Private Equity Management, Inc., & 888 Capital, LLC-
*Orange County, CA*; Valueluck.com, Inc.-*DE*; American Heritage Funding, LLC & Archer Resources-*NV*; Larry Alan Du Vall -- *AZ*;

**List the California County,** or State if other than California, in which **EACH** claim arose.    (Use an additional sheet if necessary)

**Note:** In land condemnation cases, use the location of the tract of land involved.

Orange County, California

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):**                                                             Date  October 23, 2008

SYLVIA M. SCOTT for Plaintiff TURAN PETROLEUM

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969.  (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |